JONATHAN K. GREENOUGH *et al.*, Plaintiffs in Error, *v.* EDMUND D. TAYLOR *et al.*, Defendants in Error.

ERROR TO COOK.

In a proceeding against the representatives of a decedent, the holder of a note, an indorsement upon it, written with a pencil, indicating a payment, raises a strong presumption of its truth, which the holder should explain away if it is to be avoided.

In such a case, if demands, which were specified in a mortgage given by the decedent, have been paid by the mortgagee, he should make proof thereof, in a proceeding against the representatives of the decedent, to foreclose the mortgage. Strict proof must be made in a proceeding affecting the rights of infants.

ON the 12th June, 1838, James Whitlock was indebted to Taylor, Breese & Payne, $3,537.65, for merchandize sold him in 1836, for which he gave his notes and a mortgage on certain real estate, payable in one and two years, with six per cent., bearing date on the said 12th June, 1838, which debt and notes are recited in the mortgage as due and unpaid. The mortgage also recites that Taylor, Breese & Payne have agreed to pay, for Whitlock, to Peter Pruyne & Co., and to Edward Doolittle, Hall & Lewis, and Kinzie, Davis & Hyde, out of the avails of

the property mortgaged, in a ratable proportion, the several amounts due them from Whitlock; and conditioned to be void in case said several debts and claims were paid.

After the execution of the mortgage, Whitlock died, leaving heirs—some minors. The bill alleges that Whitlock, in his life time, and his heirs and representatives since, *neglected* to pay any portion of the purchase money.

That the debt due to them is wholly unpaid, and is still due with the interest—$3,537.65.

Interest from June 12, 1838.

That they paid E. Doolittle, - - - - - $307 58
" " Kinzie, Davis & Hyde, - - 124 30

Interest from Oct. 1, 1842.

" " Peter Pruyne, & Co., - - - 395 31

Interest from April 27, 1842.

The bill was taken as confessed as against the adult defendants. A guardian *ad litem* was appointed for the minor heirs, who filed his answer, and the matter was referred to the master in chancery, who reported the evidence, and that there was due to complainant the sum of $4,117.51.

The report of the master shows that he had computed the amount due to the complainants, and found due to them the sum of sixteen hundred and three dollars and three cents, for interest, and the further sum of $2,513.48, for principal, making, together, $4,116.51. The report then sets out the mortgage at length, and also the note described in the mortgage, as indorsed in blank, and states that on the back of the note is an indorsement made with pencil, to wit, " Rec'd, Archer, $1,800." The several claims before referred to are also stated, with their respective assignments, and receipts given for their payment by Seth Payne.

This report was confirmed by the court, and a decree entered accordingly by HUGH T. DICKEY, Judge, of the Cook Circuit Court.

C. BECKWITH, for Plaintiffs in Error.

N. H. PURPLE, for Defendants in Error.

CATON, J. The proof in this case is entirely insufficient to warrant the master's report of the amount due the complainant, or to justify the decree of the court, as against the infant defendants. In the first place, the words indorsed in pencil on the back of the principal note, " Received, Archer, $1,800," required explanation, before the master refused to allow that as a credit on the note. The maker of the note was dead and the suit was prosecuted against his representatives, a part of whom were infants. This note is produced with this indorsement

upon it, which, if not absolute proof of payment to that amount, raises a strong presumption of payment. It must have been put there while in the hands of the holder, who should have the means of explaining it, if it was not intended as evidence of payment. Indeed, it is difficult to conjecture for what other purpose it could have been put there. These infant defendants, as to whom full proof is required, cannot be presumed to know any thing of the transaction, and cannot be expected to explain it. Unexplained, we think the complainant should be held bound by an indorsement, which the law presumes was made by him, or with his consent and direction. Again, several other sums were allowed the complainant as payments made by Taylor, Breese & Co., to Harman and Loomis, to E. Doolittle, and to Kinzie, Davis and Hyde, without a particle of legal proof to sustain the report of the master. He reports copies of papers showing that those parties profess to have received the several amounts reported, of Seth Payne, on account of demands which they held against James Whitlock. But there is no proof that they were just debts against James Whitlock, or that he had directed them to be paid. It is true the mortgage authorized Taylor, Breese & Co., to pay debts of Whitlock to those parties and stood as a security for the repayment of advances thus made. But this did not authorize them to pay any account which those parties might present against Whitlock. If they paid a claim without his express sanction, they necessarily must take the responsibility of proving that the amount was actually due from Whitlock. Again, admitting that those debts were justly due those parties, and that the receipts produced were actually executed by them, of which there is no proof, still the payments do not appear to have been made by Taylor, Breese & Co., who were the parties authorized to make the payments, and indemnified by the mortgage, for the payments thus to be made. Nor do they show that the payments were made of funds belonging to Taylor, Breese & Co., or on their account, or for their benefit. The receipts show that the payments were made by Seth Payne, who, for aught that appears, was a total stranger to the mortgage, and who may as well be presumed to have made the payments, out of his own funds, or of money belonging to Whitlock in his hands, as of the moneys of Taylor, Breese & Co. When we remember that nothing could be taken for granted against these infants, but that every thing was required to be proved, as much as if every thing had been denied by the adult defendants in their answers, it will be apparent that the proof was defective, in every particular, to sustain the decree.

The decree must be reversed, and the suit remanded.

*Decree reversed.*