PARKER, C. J., and BICKLEY, J., concur.

---

[No. 2745.   Nov. 17, 1923.   On Rehearing March 30, 1925.]

## MARTIN v. NEW YORK LIFE INS. CO.

### SYLLABUS BY THE COURT

1.   When the record contains a bill of exceptions, evidence not contained therein, whether it be oral or written, cannot be considered upon appeal.

2.   Where the plaintiff makes out a prima facie case, by introducing evidence which forms an issue to be submitted to the jury, and nothing appears in the record tending to controvert such case, it is error to direct a verdict for the defendant.

3.   The provision contained within an insurance policy

giving to the insurer the right to forfeit the policy upon default in the payment of a premium thereon is for the protection of the insurer and may be waived by it.

4. Where a worthless check is sent by the insured to the insurer with which to pay a premium upon a policy, it may be accepted by the insurer as payment of such premium, and when so accepted, the right to declare a forfeiture for nonpayment of such premium is waived, even though such check is dishonored by the bank upon which it is drawn.

5. The mere sending of a worthless check of the insured to the insurer, with which to pay such a premium, in the absence of any fact or circumstance indicating it is received by the insurer as payment, does not constitute a waiver of the right of forfeiture for nonpayment of such premium.

6. Where the insurer receives the personal check of the insured, tendered in payment of a premium due upon a policy and the insurer issues and delivers its official receipt acknowledging payment, the burden rests upon it to show that such check was not received as payment, but for collection.

7. Forfeitures are not favored, and hence the slightest evidence indicating a waiver of such right will support a finding to that effect.

8. The provision of a policy that it shall be effective from and after a certain named date, which is prior to the date of its issuance, is valid, as the parties have the right to so agree between themselves, and such a provision will be given effect in the absence of anything showing a contrary intention or understanding.

## ON REHEARING

9. When physical evidence renders it apparent that certain pages of the bill of exceptions have been inadvertently transposed, so as to follow instead of precede, certificate of the court stenographer, and that it is plain such transposed pages are in fact a part of the bill of exceptions, they will be so considered.

10. It was within the discretion of the court to require all of the material portions of a letter to be read, when the plaintiff offers a portion thereof.

11. It was error for the court to admit in evidence, over objection of plaintiff, a letter from the defendant insurance company, addressed to the deceased husband of the plaintiff, containing self-serving declarations; there being no proof that said letter had not been answered by the addressee.

12. The court erred in admitting certain unauthenticated markings and indorsements appearing upon a check received in evidence, even though the check was properly received in evidence. The indorsements did not prove themselves.

13. Decision in former opinion approved.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Suit by Olga A. Martin against the New York Life Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded with directions.

George C. Taylor, of Albuquerque, for appellant.

Francis C. Wilson, of Santa Fe, for appellee.

#### OPINION OF THE COURT

BRATTON, J.   The appellant, Olga A. Martin, who is the surviving widow of Frank A. Martin, deceased, and the beneficiary in the policy of insurance herein referred to, instituted this suit against the appellee, New York Life Insurance Co.. to recover judgment upon a policy of insurance issued by it upon the life of Frank A. Martin, under date of October 18, 1907, in the principal sum of $2,000, less the sum of $276, which is admitted to have been loaned to the insured during his lifetime.

The appellee admitted the issuance of the policy, and that all premiums thereon up to and including the year 1914 had been duly paid.   It pleaded by way of affirmative defense that the annual premium due on October 18, 1915, was not paid; that, by the terms of the policy, it was extended for a period of three years, plus 329 days, which extended time expired about 7 days prior to the death of the insured, which occurred on September 22, 1919. The nonpayment of the premium referred to was denied by the appellant.

The case was tried by a jury, and at the close of the appellant's case, the appellee moved for a directed verdict in its favor, because the evidence showed that the premium due on October 18, 1915, was not paid, and that the policy had expired prior to the death of the deceased.   This motion was granted and the directed verdict returned upon which judgment was rendered.

[1, 2]   The appellant urges for a reversal of the case that the court erred in directing such verdict because she had made out a prima facie case, and had introduced evidence which formed an issue to be submitted to the jury.   In this connection, appellant testi-

fied that she had delivered to her attorney a number of receipts for annual premiums paid upon this policy; her attorney testified that he had received from her the official receipt of the appellee evidencing payment of the annual premium due on October 18, 1915; that he had seen it and placed it in his safe; that it had been lost and could not be found. This evidence, standing alone, made out a prima facie case for the appellant, as there seems to be no dispute but that the policy was by its terms and provisions extended in force beyond the date on which the insured died, if the premium in question was paid. The appellee, to overcome this prima facie case, relies upon a certain check, which, it contends, was transmitted by the deceased to the appellee with which to pay such premium; that said check was not paid, but was returned unpaid by the bank upon which it was drawn on account of insufficient funds with which to pay it. The difficulty which surrounds the appellee is that the check is not contained within the bill of exceptions. What purports upon its face to be such check is to be found in the record proper, but not within the bill of exceptions. This check is but a part of the evidence, and cannot be considered by us unless it is brought here as a part of the bill of exceptions, duly authenticated by the certificate of the trial judge, his successor in office, or some other judge designated for that purpose as provided by law. Without such a certificate, there is no verity or authenticity to evidence, whether it be oral or written. Oliver Typewriter Co. v. Burtner & Ramsey, 17 N. M. 354, 128 Pac. 62; Mundy v. Irwin, 19 N. M 170, 141 Pac. 877; Rogers v. Crawford, 22 N. M. 365, 161 Pac. 1184; Cox v. Douglas Candy Co., 22 N. M. 410, 163 Pac. 251; State v. Wright (N. M.) 213 Pac. 1029.

The appellant offered in evidence part of a certain letter and desired to read to the jury only such portion so offered. The trial court held that, if she offered any part of it, the whole must be offered and read. This is assigned as error, but we cannot review the question, because the letter referred to is

not contained within the bill of exceptions. What purports to be such letter is shown in the record proper, but not within the bill of exceptions. What we have hereinbefore said controls us here. The question is not reviewable, as the letter is not properly before us.

Other questions are discussed by counsel in their briefs; but the condition of the record does not present them for determination upon this appeal. Obviously, however, these will be presented to the trial court upon the subsequent trial of the case, and, as they are perhaps controlling, we think it best to discuss them for the guidance of the court and counsel as well as the profession generally.

Much is said by counsel with regard to the effect of payment of an annual premium by the personal check of the insured which is dishonored by the bank upon which it is drawn, and our discussion upon this subject will be predicated upon the assumption that the deceased obtained the official receipt of the appellee, evidencing the payment of the annual premium due on October 18, 1915, concerning which the appellant and her attorney testified, by transmitting to the appellee company his personal check, which was not paid by the bank upon which it was drawn, and was returned to the deceased by the appellee with a demand that such receipt be returned to it.

[3, 4] A contract of insurance like this one is one extending throughout the lifetime of the insured, and which matures upon his death, with the obligation then resting upon the insurer to discharge it by making payment in the sum and manner and to the person entitled thereto according to the terms of such contract. This obligation is conditioned upon the payment to the insurer of certain sums at fixed intervals. These payments are commonly denominated premiums, and their payments are necessary in order to bind the insurer to discharge its obligations imposed by the contract. The insurer has the right to forfeit and declare annulled the entire contract upon default

being made in such payments. It has the further right to determine how and in what manner they shall be made. It may accept post office or express money order, bank draft, or the personal check of the insured as payment, and it may demand cash in settlement and payment thereof, but these are all rights of the insurer which may be waived by it. If it receives and accepts the personal check of the insured as payment of the premium due, and issues its official receipt evidencing such payment, it thereby waives its right to declare a forfeiture of the policy, even though the check is dishonored by the bank upon which it is drawn.

"Generally, it may be said that, where accepted as such, payment may be accomplished by the delivery to the insurer of a draft, and, where this is done, the effect of payment is not destroyed by the fact of failure of the drawer after the draft has been received by the insurer, or payment may be made by the delivery of the personal check of the insured if it is accepted as payment."     14 R. C. L. 964, 965.

Again it is said by another of the standard authorities:

"The application of this general rule to the payment of premiums is, however, subject to exceptions and qualifications, for a check, draft, or note, may be accepted under such circumstances as to clearly indicate that a payment of the premium was affected thereby, at least so as to continue the policy in force and preclude a forfeiture, and this is so held even though said check. draft, or note be not paid when due or be dishonored. Again, although the insurer has the right to demand cash in payment of a premium, it may waive such right and accept in payment notes, checks, or drafts, or any other thing of value."     2 Joyce on Insurance, 2256.

This rule has found its application in many cases where the insurer has written the insured, calling attention that the premium has either fallen past due, or will be due at an approaching date, and directing that he send a check or draft, as the case may be, which is done by the insured. It is almost universally held that, under such circumstances the right to declare a forfeiture upon nonpayment of such check or draft cannot be had because the insurer, by such directions, is held to have agreed to accept such commercial paper as payment and settlement of the

premium due, and cannot thereafter be heard to asesrt its right so waived. 3 Cooley on Insurance, 2318; Penn. Lumberman's Mut. Fire. Ins. Co. v. Meyer, 126 Fed. 352, 61 C. C. A. 254; MacMahon v. U. S. Life Ins. Co., 128 Fed. 388, 63 C. C. A. 130, 68 L. R. A. 87, Mutual Iife Insurance-Co. v. Chatanooga Savings Bank, 47 Okl. 748, 150 Pac. 190, L. R. A. 1916A, 669, and the authorities cited in note appended thereto. Such directions merely constitute evidence that the check or draft was received as payment, which fact might be proven in other ways, by direct or circumstantial evidence. We note the leading contrary case of National Life Ins. Co. v. Goble, 51 Neb. 5, 70 N. W. 503, which holds that even though the insurer does direct the insured to remit by bank draft, which was done, and that the draft was not paid because the drawing bank failed before it reached the drawee bank, a forfeiture may still be exercised by the insurer, because no payment of the debt was thereby effected. This case, we think, is against the weight of authority, and we decline to follow it. This conclusion was reached by the Circuit Court of Appeals in MacMahon v. Insurance Co., supra.

[5] In connection with this subject, we think the mere delivery to the insurer of a worthless check or bank draft, which is dishonored when presented for payment, in the absence of any fact or circumstance indicating an agreement on the part of the insurer to accept it as payment of the premium then due, does not operate to waive the right of forfeiture upon its nonpayment, as the general rule of commercial transactions is that the receipt of such a check or draft is predicated upon the implied understanding that it will be paid. Veal v. Security Mut. Ins. Co., 6 Ga. App. 721, 65 S. E. 714; Fidelity Mut. Life Ins. Co. v. Click, 93 Ark. 162, 124 S. W. 764.

[7] And before leaving this subject, we travel out of our way, perhaps, to say that courts never favor a forfeiture. This rule applies in a case where the insurer attempts to escape liability upon the theory of a forfeiture for nonpayment of premiums. So that

very slight evidence will suffice to support a finding that a waiver of the right of forfeiture has occurred. 1 Joyce on Ins. 574; 3 Cooley on Ins. 2259; Mut. Life Ins. Co. v. French, 30 Ohio St. 240, 27 Am. Rep. 433; Lyon v. Travelers' Ins. Co., 55 Mich. 141, 20 N. W. 829, 54 Am. Rep. 354.

[6] And the fact that the insurer, upon receipt of the personal check of the insured, issues and delivers its official receipt, by which it declares in writing that the premium such check is tendered in payment of has been actually paid, so strongly indicates that it did receive such check as payment, that the burden would rest upon it to show otherwise. Such a rule necessarily arises from its written admissions contained in the receipt. It would necessarily bear the further burden of showing that such check was presented to the bank upon which it was drawn, and that its payment was refused. So that if the appellee received and accepted the check of the deceased as payment of the prmium due on October 18, 1915, its right to forfeit for nonpayment of premiums did not arise until default had been made in the payment of the next annual premium due.

The last question discussed by counsel, and which we deem necessary to express our views upon, is the date upon which the policy became effective. It is dated November 16, 1907. It provides:

"In consideration of the sum of seventy-three dollars and ten cents, the receipt of which is hereby acknowledged, constituting payment of the premium for the period terminating on the eighteenth day of October, nineteen hundred and eight, and in further consideration of the payment of a like sum on said date, and thereafter on the eighteenth day of October in every year during the continuance of this policy, until premiums shall have been paid for fifteen full years from October 18th, nineteen hundred and seven, or until the prior death of the insured. * .* * This policy takes effect as of the eighteenth day of October, nineteen hundred and seven."

[8] From the quoted provisions of this policy, it is to be observed that, by the terms of the contract agreed upon by the parties, the first premium paid extended the policy until October 18, 1908; that on that day the second premium should be paid; and that

payment of all subsequent premiums during the 15 years such premiums were required to be paid should be made on that day and month. The policy is positive, unambiguous, and free from doubt with regard to the dates upon which the premiums shall be paid. It fur- ther expressly provides that it shall be effective from October 18, 1907. The parties had the right to so agree if they chose so to do. There is nothing in the policy which provides that it shall become effective at a subsequent date, nor that it shall not become effec- tive until delivered; there is nothing contained within it which indicates that they had any other idea or in- tention the nto agree that all subsequent premiums should be paid on October 18th of each year until it had been fully paid out. There is no question of inconsistent provisions of the contract, for they all harmonize. Appellant argues that this construction results in the deceased securing protection under such policy for a term less than a full year in consideration of first premium paid. We may for the moment con- cede this to be true, and yet it does not affect the terms of the policy with regard to the dates upon which the insured agreed to pay his annual premiums. The policy recites that the sum so paid constituted pay- ment of the premium for the period terminating October 18, 1908. The parties so agreed, and for us to hold otherwise would result in making a new and different contract from that to which they agreed, which is neither the function nor practice of the courts. In the absence of fraud or mistake, neither of which is charged, the plain terms of the policy should be given effect. We are therefore of the opinion that, by the terms of the policy, it became effective October 18, 1907. Tibbitts v. Mut. Ben. Life Ins. Co., 159 Ind. 671, 65 N. E. 1033; Rose v. Mutual Life Ins. Co., 240 Ill. 45, 88 N. E. 204.

From what we have said, it appears that the ap- pellant had made out a prima facie case at the time she rested; that nothing appears in the record to over- come or even controvert the same; hence it necessarily follows that it was error to instruct a verdict against

her. The judgment must therefore be reversed and the cause remanded with directions to award her a new trial, and it is so ordered.

PARKER, C. J., and LEAHY, District Judge, concur.

### On Rehearing

BICKLEY, J. A motion for rehearing has been filed on behalf of appellee, based upon the ground that this court, in the opinion heretofore rendered, had overlooked and failed to pass on plaintiff's bill of exceptions, which, it is alleged, fully rebutted plaintiff's prima facie case. It is claimed that this evidence appears on pages 119, 120, 121, and 122 in the transcript of record, and that such pages are a part of the bill of exceptions, certified to by the official court reporter and properly settled by the trial judge. In our opinion heretofore rendered we held that a certain check and other writings contained on the pages referred to were not contained within the bill of exceptions, and that such check was found in the record proper, but not within the bill of exceptions.

[9] It appears by a re-examination of the record that the reporter's certificate, found at page 123 of the transcript of record, certifies that pages 101 to 123, inclusive, which includes pages 119 to 122, inclusive, and which were the pages containing the evidence above referred to, was a complete transcript of the proceedings on the trial. The judge's certificate appears at page 125 of the transcript of record, and certifies as a bill of exceptions everything not contained in the record proper. A re-examination of the transcript reveals physical evidence of the fact that the defect was caused by the inadvertent transposition of pages 119, 120, 121, and 122; these pages being inadvertently placed after the court reporter's certificate, instead of before such certificate. It appears from an examination of the testimony of the plaintiff's witnesses wherein the exhibits referred to in said transposed pages were a part of the evidence introduced in this cause, and would not have been a part of the

record proper, but matters properly contained within the bill of exceptions.

It has been held that the inadvertent transposition of certificates, or the inadvertent misplacing of a clerk's certificate, or the transposition of the certificate of the official reporter and the order of the judge, does not affect the authenticity of the record or the completness of the record so certified. Guthiel v. Dow, 177 Ind. 149, 97 N. E. 426; Winters v. Means, 50 Neb. 209, 69 N. W. 753; Clements v. Collins, 59 Ga. 124. In view of the facts above recited, the court will consider the transcript as if the pages 119, 120, 121, and 122 had not been transposed.

In this opinion, we shall resume the history of this case at the point where it was broken off by the supposed discovery that there was not a properly authenticated bill of exceptions covering the matters set forth on such transposed pages. Other grounds for rehearing are set up in the motion, which will be considered as we proceed, and we will consider the alleged errors of the trial court which were not touched upon in our former opinion for the reasons therein set forth.

In our former opinion we held that, where the appellee, the insurer, had issued and delivered its official receipt acknowledging payment, the burden rested upon it to show that a check given in payment for the premium was not received as payment, and that the appellant had made out a prima facie case by the introduction of evidence of the delivery to the insured of such official receipt. We see no reason to change our views so announced, unless this prima facie case is overcome by the evidence contained in pages 119, 120, 121, and 122 now before us for consideration, and which was not before considered by the court for the reasons stated. In a consideration of the weight to be given to the statements in the documents introduced in evidence, and appearing on the pages mentioned, several elements will enter. The testimony of the attorney for the plaintiff below was to the effect that the docu-

ments, or some of them, appearing as Exhibits 2-P, 3-P, 4-P, 5-P, 6-P, and 7-P, were produced in answer to the written demand of the defendant insurance company.

[**10**] The only one of those exhibits which was offered in evidence by the plaintiff was Exhibit 3-P, which was a letter upon the letter head of the defendant company, which letter head contained the names of some of its officers, and which was addressed to George C. Taylor, as attorney for the plaintiff in this case. The plaintiff offered a portion of this letter for the purpose of corroborating the statement of the plaintiff that the renewal receipt for the year 1915 was issued by the company and delivered to the deceased husband of the plaintiff. This letter contains a statement that the defendant company had mailed the renewal receipt to the deceased, Mr. Martin. The defendant argued that, if the plaintiff offered the letter for any purpose, he must offer the whole letter. The trial court so held. The plaintiff objected that other portions of the letter besides those offered by her were selfserving declarations of the defendant company.

There is a conflict of authority as to whether a portion of a letter or other writing may be introduced in evidence, without the whole of the writing being also offered. Mr. Wigmore in his work on Evidence, volume 3, § 2102, sums up his consideration of the adjudicated cases in the following manner:

"It would seem that the general tendency is to require the whole of a single document to be put in and treated as the evidence of the party desiring to offer a part only, even though the actual reading be postponed. But the rulings are not harmonious nor always definite. The matter should be left entirely to the discretion of the trial court."

We do not think that the court abused its discretion in admitting other portions of this letter which may have tended to explain the admission by the defendant of the issuing and delivering of the renewal receipt of the company as expressed in the portion of

the letter offered by the plaintiff. Recitals in the letter, having no bearing on the portion of the letter introduced by the party offering it, should not, in our opinion, be admitted. As was said in the case of T. A. Robertson & Co. v. Russell, 51 Tex. Civ. App. 257, 111 S. W. 205:

"The rule that, where one party has introduced a part of a writing in evidence, the opposite party has a right to introduce the whole of the writing, means and refers to the whole of the writing bearing on, having connection with, and relating to the same subject matter, which is necessary to make it fully understood or to explain the same. It does not mean to include immaterial or irrevelant matter."

However, we do not consider the statements in the letter relative to a demand for a return of the renewal receipt because of the alleged nonpayment of the check, and read upon the insistence of the defendant, as being of much, if any, probative force, and surely not sufficient to overcome prima facie case made by evidence of the delivery of the renewal receipt to the insured. The portion of the statement relative to the check having been dishonored would have no more weight than hearsay, unless supplemented by other satisfactory evidence. The statements relative to the check were self-serving, and consequently subject to the limitations imposed upon the weight to be given to self-serving declarations.

[11] Upon cross-examination of Mr. Taylor, the attorney for plaintiff, and testifying as a witness on behalf of plaintiff, the witness was asked concerning Exhibit 6-P, being a letter from "W. Beauvais, Cashier," addressed to Mr. Frank A. Martin, the deceased husband of the plaintiff, which letter was as follows:

"New York Life Insurance Company, Darwin P. Kingsley, President Arizona Branch Office, Northwest Corner Center and Adams Sts., Phoenix, Arizona. I. J. Johnson, Agency Director. William Beauvais, Cashier. In reply please refer to file No. ............. Nov. 30, 1915. Mr. Frank A. Martin, Box 585, Albuquerque, N. M., Dear Sir: Re Policy No. 4,044,700. The check which you gave on account of the premiums due October 18, 1915, on policy No. 4,044,700 and of which the following is a copy: 'Belview, Minn., Nov. 15, 1915. Pay to the order of New York Life Ins. Co. $71.74, seventy-one and 74-100 dollars. To Farmers' State Bank,

Belview, Minn.   (Signed) F. A. Martin'—has been returned
by the bank not honored; your policy has therefore been
lapsed on the books o.° the company.   Herewith we enclose
said original check to you and demand return of the renewal
receipt you obtained at the time you gave us this check.
Yours truly, W. Beauvais, Cashier. Register."

At the same time counsel for defendant identi-
fied by the witness Exhibit 7-P, being a check, which
check was in words and figures as follows:

"No.............. ·Belview, Minn., Nov. 15, 1915.   Farmers'
State Bank: Pay $t_0$ the order of New York Life Ins. Co.
$71.74, seventy-one and 74-100 dollars.   To Farmers' State
Bank, Belview, Minn.   F. A. Martin.

[**12**]   Immediately after the witness identified
these two exhibits, counsel for defendant offered them
in evidence over the objection of plaintiff.   Counsel
for defendant then added that he was also introducing
a series of bank "markings" appearing on the check
aforesaid, and the memorandum, "Returned, no
funds."   Plaintiff's counsel renewed objection to this
evidence generally, and also specifically objected to
the "markings" on the check, on the ground that there
was no evidence as to who put them there.   Counsel
for appellant urges that Exhibits 6-P and 7-P, being
the letter and the check aforesaid, were not properly
received in evidence by the court: (1) Because they
were introduced while plaintiff was making out her
case in chief; (2) because the statements in the letter
of the defendant company were self-serving state-
ments; and (3) because the pencil markings on the
check, "Returned, no funds," was merely hearsay.

As to the first proposition, we find that there are
many authorities holding the practice of allowing the
party not calling the witness to introduce documents
which may have been identified upon cross-examination.
Since the purpose of this immediate sequence is to fur-
nish the tribunal with the means of fixing the net
significance of the witness' testimony while the tenor
of his direct testimony is fresh in their minds, and that
it seems proper enough to hold that the opponent is
entitled to this immediate sequence in order to expose
without delay the weak points of the testimony against

him.  See Wigmore on Evidence, § 1884.  We think, however, that the reasons as stated above should be clearly apparent to warrant the court in permitting documents introduced by a party who brings out the identification of the document through cross-examination of a witness on the original call of the adverse party.  As was said in the case of Kroetch v. Empire M. Co., 9 Idaho, 277, 74 P. 868:

"The practice of allowing a party to identify and introduce exhibits on cross-examination of his adversary's witness * * * should seldom be permitted."

In Blake v. Cavins, 25 N. M. 574, 185 P. 374, we said:

"Where a witness testifying in a case uses a memorandum book made by himself some years previously for the purpose of refreshing his recollection, counsel, on cross-examination, have a right to have such memorandum so used by the witness to refresh his recollection, put in evidence."

The facts in this case, however, are very different.  The documents in question were not made by the witness, and he had not testified concerning their contents, nor used them as memoranda to refresh his recollection or otherwise, but were documents which, if used at all, would be properly used as a part of the defendant's case to support its contentions.  Even though this letter and check, being Exhibits 6-P and 7-P, were not objectionable as having been received while plaintiff was making her case, were they admissible in evidence, and, if so, what weight should be given to them?

Exhibit 6-P contains self-serving declarations to the effect that the policy of the insured had lapsed, because the check given by the insured had been returned by the bank not honored.  To what extent and under what conditions a self-serving unanswered letter or telegram passing between persons in the general course of business is admissible in favor of the person sending it has been the subject of much discussion by the courts and the decisions are not harmonious.  The general trend of the decisions is to the effect that such a letter is admissible, but only as an admission implied from the silence of the recipient.  See authorities collected

in the note to Dennis v. Waterford Packing Co., 113 Me. 159, 93 A. 58, and cases in Ann. Cas. 1917D, at page 788.   In Murphey v. Gates, 81 Wis. 370, 51 N. W. 573, it was held that several letters written by the plaintiff to the defendant, demanding a balance due for services rendered pursuant to a contract, together with evidence of the failure of defendant to deny the truth of the statements, were admissible in favor of the plaintiff.   In that case it was said that the failure of the defendant to respond to the letters, or to deny in any form the statements therein, was a tacit admission of them, and to that end the letters of the plaintiff were admissible.

The following is a quotation from the note to Dennis v. Waterford Packing Co., Ann. Cas. 1917D, 788.

"It has been said that failure to answer a self-serving written communication is seldom to be regarded as an admission by the persons addresses, but that exceptional circumstances may justify the court in submitting it to the jury with a proper caution.   Morris v. Norton, 75 Fed. 912, 43 U. S. App. 739, 21 C. C. A. 553, wherein the court said:   'The rule is well settled that conversations between parties to a controversy, in which one makes a statement of fact of which both have personal knowledge, and which naturally calls for a denial by the other if the statement is untrue, are competent against the silent party, as admissions, by acquiesence, of the truth of the statement.   The weight of the admissions varies with the circumstances of the case, and the strength of the probability that the statement, if untrue, would have evoked a denial, and is always for the jury, guided by a proper caution of the court as to the theory upon which such conversations are admitted. * * * With respect to written communications, however, the rule is different, because the failure of one receiving a letter to answer it may be attributed to many causes besides an acquiescence in the truth of what is written, and such a rule would furnish a dangerous weapon in the hand of an unscrupulous party to make evidence in his favor against a careless opponent.   It cannot be said, however, to be an unvarying rule that an unanswered letter may not be evidence against the person addressed because there are cases in which such letters have been admitted. (Authorities cited.)   These authorities are explained—some of them—on the view that a demand by the plaintiff of the defendant was necessary to the plaintiff's case, and the latter unanswered was competent to show this, but it will be observed that even in those cases the jury was permitted to draw inferences from the failure to answer the demand.   The better supported rule, probably, is that unanswered letters are ordinarily not evidence against

the person addressed, as admissions of the truth of statements contained therein."

A consideration of the discussion quoted above suggests a very important lack in the case of the letter of November 30, 1915, supposedly from the defendant company, in that there is no evidence in the record showing that the letter was not answered by the recipient, the deceased, Mr. Martin. For this reason, and for the reason that the manner of its reception in evidence precluded the plaintiff from a cross-examination of the party sending the letter, which opportunity would have been presented in the event the latter had been identified and offered by the sender, which cross-examination might have elicited facts with respect to the receipt of an answer thereto, we think that the letter was inadmissible as evidence in the manner in which it was received.

Even though it were considered that Exhibits 6-P and 7-P were put in evidence by the plaintiff, or that the body of the check was properly received when offered by defendant, it is apparent that the markings and indorsements which were on Exhibit 7-P, being the bank idorsements and the memorandum in pencil, "Returned, no funds," were not properly in evidence over the objection of plaintiff. It was this indorsement of the words, "Returned, no funds," that defendant relied upon in writing the letter of November 30th, and also in court, as showing that the check had been dishonored.

Even where a paper has been properly admitted in evidence, indorsements on the document are inadadmissible, if objected to. See Encyc. of Evidence on "Objections," vol. 9, p. 118, and Wallach v. Kind (City Ct.) 16 N. Y. S. 204, cited. In the articles on "Payment" in the same volume of Encyc. of Evidence, at page 725, it is said:

"An endorsement of payment on a note is admissible on behalf of the debtor, although not signed, but is not admissible on behalf of the holder."

"The endorsements on the note, on the evidence of the plaintiffs, were utterly worthless to prove either that the

alleged payments were made; or by whom made, or when made; and without this, they should not have been permitted to be read to the jury. * * * To permit the fact of payment to be established by the credit entered on the note," the court said, it "would be, manifestly, allowing the party relying on it to make evidence for himself." Knight v. Clements, 45 Ala. 89, 101, 6 Am. Rep. 693.

In the case of Hugumin v. Hinds, 97 Mo. App. 346, 71 S. W. 479, it was held that in an action by an indorsee on a negotiable note, where it was denied that plaintiff was a bona fide purchaser for value, the admission of the indorsement of the payee in evidence, over defendant's objection, was error. The court said:

"Defendants insist that the cause should have been submitted to the jury on the pleadings and the evidence. Without going very far into the merits of the case, it is clear that the burden of proof rested on plaintiff to submit, in the first instance, some evidence tending to prove the fact of the indorsement. The trial court admitted in evidence the indorsement of the payee without any prior proof of its authenticity, and over the objection and exception of the defendants. The indorsement did not prove itself. Bank v Pennington (K. C.) 42 Mo. App. 355. Defendants admitted the execution of the note, but that admission did not waive or dispense with proof of the indorsement."

In the case of Hellard et al. v. Nance et al. (Ky.) 114 S. W. 277, lt was held:

"An indorsement on the back of a deed that the grantee's widow and her heirs assigned the deed to L. and his heirs, signed by only two of the widow's heirs, to which was attached a certificate by a third person to stand good that the minor heirs would sign when they became of age, was inadmissible as evidence, in the absence of proof of execution by the heirs who signed it."

The court further said:

"No witness was introduced who testified as to the alleged assignment: the writing alone being exhibited as evidence of it. The objection to this assignment as evidence on behalf of appellee should have been sustained."

In Sussmann v. MacKewan (Sup.) 148 N. Y. S. 152, it was held:

"The admission in evidence, in an action for rent, of a lease upon the back of which were assignments from the lessor to W. and from W. to plaintiff without proof of the genuineness of the signatures to such assignments, was error."

With respect to these Exhibits 6-P and 7-P, which

appellee relies upon to neutralize the prima facie case made by evidence of the delivery to the insured of the renewal receipt, it is argued by counsel for appellee that plaintiff voluntarily offered these exhibits in evidence, and therefore may not complain of their contents. The record is somewhat confusing, but we gather from an examination thereof that appellee is mistaken, and that only Exhibit 3-P was actually offered in evidence by the plaintiff. At page 107 of the transcript it appears that the witness, who was attorney for plaintiff, testified that there were a number of copies of letters attached to depositions, "some of which they have requested to put the originals in. I am not sure, some of them have been lost—some ten letters from Mr. Martin's files." At page 108 witness said with respect to Exhibit 3-P: "We produce this letter in answer to the demand written by the company." The confusion occurs as to whether the attorney for plaintiff from the witness stand was responding to a written demand for the production of letters and other writings, and was making a record of such response by having such papers produced and identified, or was introducing the documents in evidence. It is clear that plaintiff's counsel did offer in evidence Exhibit 3-P. Plaintiff did not offer to read to the jury from Exhibits 4-P, 5-P, 6-P, and 7-P. It is difficult to reconcile why they offered them in evidence, yet objected to their being so read.

Defendant's counsel, however, on cross-examination of the witness Taylor, further elicited identification of Exhibits 6-P and 7-P as being respectively a letter from the defendant company and a check of the deceased husband of the plaintiff drawn in favor of the company, and established the authenticity thereof by the witness, and then offered them in evidence, and they were so received by the court over the objection of the plaintiff. It is apparent that the able counsel for defendant did not consider these documents as having previously been offered and received in evidence. It is unlikely that, if the court had considered them as having been in evidence, it would have an-

nounced that they would be admitted when they were offered by the defendant. It is singular that the defendant would object to their introduction by the defendant, if he had already offered them and they had been received. Immediately following the account of the last mentioned incident, the court reporter recites:

"The letter and check referred to, Exhibits 6-P and 7-P respectively, were then received in evidence and read to the jury. At the conclusion of reading the latter, Mr. Seth stated, 'With a series of bank markings on that, marked "Returned, no funds," ' to which plaintiff objected, and which objection was by the court overruled."

For the reasons stated, we have considered these exhibits as having been offered in evidence by the defendant alone. If we are mistaken in our view that these two exhibits, 6-P and 7-P, were introduced by the defendant, and not by the plaintiff, we are yet of the opinion that the evidence, if any, contained therein, was not of such a character as would overcome the prima facie case made by the evidence of the receipt of the defendant company delivered to the insured.

In any event, it would not leave such an entire absence of evidence on behalf of plaintiff, which would warrant the court in directing a verdict for the defendant. In the case of Sherman v. Hicks, 14 N. M. 439, 94 P. 959, we said:

"Where there is any evidence on any issue raised by the pleadings, the court must submit it to the jury."

In New Mexico-Colorado Coal & Mining Co. v. Baker, 21 N. M. 531, 157 P. 167, we said:

"Whenever the evidence adduced presents an issue of fact which, if determined in plaintiff's favor, would entitle him to recover, the case should be submitted to the determination of jury."

Even when the situation is most favorable for sustaining the admissibility in evidence of self-serving letters, the jury should be permitted to draw inferences from the failure to answer the demand made in such letters, and that even in conversations where one party makes a statement which calls for a denial by the other,

if the statement is untrue, the weight of the admissions varies with the circumstances of the case and the strength of the probability that the statement, if untrue, would have evoked a denial and is always for the jury, guided by a proper caution of the court as to the theory upon which such conversations are admitted. See Morris v. Norton, 75 F. 912, 21 C. C. A. 553, supra.

[13] Although our conclusion is reached by a different route, we see no reason to change the ultimate decision as announced in our former opinion.

PARKER, C. J., and WATSON, J., concur.