**PHILLIPS v. LAGALY et al.**

No. 4803.

United States Court of Appeals,
Tenth Circuit.

July 8, 1954.

James E. Grigsby, Oklahoma City, Okl., for appellant.

Gus Rinehart (of Butler, Rinehart & Morrison), Oklahoma City, Okl., for appellees.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The National Farmers Union Property and Casualty Company, herein called the company, instituted this action against John A. Lagaly, George Wayne Kelley, a minor, and Mary Cleo Phillips, his guardian, seeking a declaratory judgment that the company was not obligated under its insurance policy to defend the defendant Lagaly in a damage action in the state court of Oklahoma, instituted by Wayne Kelley and his guardian, and was not obligated to pay any final judgment against him in that action. Trial was had to a jury. At the conclusion of all the evidence, the company moved for a directed verdict. The defendants likewise moved for a directed verdict in their favor. The court in effect withdrew the case from the jury and entered judg-

ment, determining and adjudicating that the company was not obligated to defend the action or to pay any final judgment obtained against Lagaly in the action. The correctness of the judgment depends upon whether there was evidence from which it could have been concluded that a dishonored check given in payment of the premium nonetheless constituted payment of premium, so as to prevent a lapse and forfeiture of the policy for want of premium payment.

The facts are these. The company had issued an automobile liability policy to Lagaly. It was originally issued for a period of one year, effective from January 29, 1951, to January 29, 1952. By its own limitations it expired on January 29, 1952, unless it was extended by the payment of an additional premium. On January 16, 1952, Lagaly wrote a letter enclosing a check made payable to the company for $37.80, drawn on the First National Bank at El Reno, Oklahoma, to extend the policy for a period of six months. Upon receipt of the check, the company issued a regular premium payment receipt, acknowledging receipt of the premium and stating that the policy was in force for the additional period of time. When the check reached the bank, it was dishonored for want of funds and marked "insufficient funds" and was thus returned to the company. By letter of February 12, 1952, the company advised Lagaly that the check had been returned marked "insufficient funds" and that he had no coverage under the policy. Nothing further was done by Lagaly until June 18, 1952. On that date he had an automobile accident out of which the damage action against him in the state court arose. On that date he mailed a check to the insurance company for $37.80 in payment of the check which had been returned by the bank. The company refused to accept this check and wrote Lagaly that the policy would not be reinstated. On February 24, 1953, the company instituted this action against Lagaly and the other parties defendant for a declaratory judgment as set out above. He in turn made demand on the insurance company to defend the state action.

■■ Whether the acceptance of a check constitutes payment depends upon the intent of the parties. A leading case on the question is Martin v. N. Y. Life Insurance Co., 30 N.M. 400, 234 P. 673, 675, also reported and annotated in 40 A.L.R. 406. The general rule is there stated to be that "the receipt of such a check or draft is predicated upon the implied understanding that it will be paid." That is also the rule in Oklahoma where the court has said that "An insurer may accept a personal check in payment of a life insurance premium, but such acceptance is conditional, in the absence of a contrary intention, upon due payment of the check, and the burden is upon the insured or his beneficiary to prove a contrary intention on the part of the insurer." Central States Life Insurance Co. v. Johnson, 181 Okl. 367, 73 P.2d 1152, 1153; See also Great Southern Life Insurance Co. v. Brooks, 166 Okl. 123, 26 P.2d 430.

While the issuance of a receipt for the premium standing alone evidences an intent to accept the check as payment of the premium, it must in the absence of a contrary showing be considered in connection with the medium of payment. If a check in the absence of a contrary showing constitutes only conditional payment, then a receipt issued for such a check is likewise conditioned upon the ultimate payment of the check.

■ Not only have appellants failed to sustain the burden resting on them to show that the check was accepted unconditionally as payment of the premium but the record establishes by undisputed evidence that the check was accepted upon condition that it be paid when presented. Promptly upon receipt of notice of dishonor from the bank, the company wrote Lagaly under date of February 12, 1952, advising that since the check was not paid he had "no coverage under your policy." Although the letter gave him the privilege of substituting a new check, he was advised there would be

no further notice to him. The letter closed by stating, "Thank you for your immediate cooperation in this matter *so we may put your policy in force promptly.*" [1] This could leave no doubt in Lagaly's mind that his insurance was at an end and could be reinstated only by the receipt of a proper remittance. Apparently he acquiesced in this construction. He did nothing from February 12 to June 18, the day on which he had the automobile accident. On that day he mailed a check for $37.80 in payment of the check which had been returned by the bank but the company returned that check to him and advised him again that his policy was at an end.

It is contended that in any event the company by its conduct waived its right to rely on forfeiture. It is pointed out that the company investigated the accident, employed an attorney, one McGinness, to represent Lagaly in a case pending in police court growing out of the accident; told Mary Cleo Phillips that it would settle the case and pay the medical bills; told the physician that it would pay the medical bills and represented to the Department of Public Safety of Oklahoma that the policy was in force and effect. There was evidence that McGinness, an attorney and claim adjustor for the company, talked with these persons and made statements somewhat as outlined. Lagaly was himself a soliciting agent for the company. He wrote this policy. McGinness was an attorney and claim manager for the company. It was Lagaly who advised McGinness by letter of the accident and assured him he had a policy of insurance. McGinness acted upon the information received from Lagaly, believing therefrom that there was a policy in force. In line with his responsibilities it was his duty to undertake an investigation. After taking these preliminary steps and investigating the claim, he learned from the home office of the company that there was no policy in force. After learning this, he took no further steps which could

be regarded as recognizing liability under the policy.

 Waiver is the intentional relinquishment of a known right. 56 Am. Jur. Waiver § 2, page 102. Assuming without deciding that McGinness' status was such that he could bind the company, it was clear that he did not intend to relinquish the right of the company to deny liability, because the policy had been forfeited. What he did, he did under the belief from knowledge coming to him from Lagaly that the policy was in force and, when he ascertained that it was not in force, he took no further action in the matter. There is no basis in the record for the contention that the company knowingly and intentionally waived its rights in this respect.

Affirmed.