(No. 51625

THOMAS D. CULLOTTA, Appellant, v. KEMPER COR-
PORATION *et al.*, Appellees.

*Opinion filed December 3, 1979.*

Richard C. Kelly, of Crystal Lake, for appellant.

John Narusis, Jr., of Crystal Lake, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court:

The circuit court of McHenry County granted a motion for summary judgment in favor of defendants, Kemper Corporation and Economy Fire & Casualty Company (insurer), after finding that plaintiff's auto insurance coverage was not in effect at the time of plaintiff's loss. The appellate court affirmed (66 Ill. App. 3d 812) and we granted plaintiff (insured) leave to appeal.

The following facts were established by the pleadings and affidavits. The insurer issued a policy of automobile insurance to the insured for the period of May 15, 1975, to November 15, 1975. On December 8, 1975, the insurer sent the insured notice that, effective December 18, 1975, his policy would be cancelled for nonpayment of a renewal premium of $218.50, due November 15, 1975. On December 30, 1975, the insurer received an undated check from the insured in the amount of $218.50. One of the

insurer's employees made a notation—"Reinstate 12-30-75 KJ"—on the in-house copy of the insured's cancellation document. The insurer then sent a renewal policy of insurance to the insured which stated that the policy was reinstated to cover the period from November 15, 1975, to May 15, 1976.

On January 4, 1976, the insured reported to the police that his automobile had been stolen. The next day, the police notified both the insured and the insurer that the automobile in question had been found in Chicago but that it had been destroyed by fire.

The insured's check, marked "insufficient funds," was returned to the insurer by the bank on either January 6 or 8. The insured's account had contained sufficient funds to cover the check until January 6, 1976. On January 9, 1976, the insured received notification from his bank that the check had not cleared, and, on January 15, 1976, without notice to the insurer, he deposited $500 in his checking account to cover the check. The insurer did not present the check a second time for payment. On January 20, 1976, the insurer sent a letter to the insured in which it advised him of the return of his check due to insufficient funds and notified him that his coverage was terminated as of November 15, 1975. The letter also stated that coverage under the policy was "contingent upon payment of the premium." This was the first time conditional language was used in any communication between the parties. On January 22, the insured received the letter and immediately forwarded a cashier's check for the amount due on the policy. The insurer refused to negotiate the cashier's check.

The question presented for review is whether a contract for insurance was formed when the defendant insurance company received the insured's check of $218.50 for the overdue premium or whether the contract was conditioned on the check being honored upon

presentation for payment. The appellate court, in affirming the trial court's grant of summary judgment in favor of the insurer, held that there were no facts presented to suggest that the check was accepted unconditionally. We reverse that holding.

The general rule is embodied in the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—511(3)):

> "[P]ayment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." ·

However, it is clear that the rule may be altered by the express or implied intentions of the parties. 43 Am. Jur. 2d *Insurance* sec. 565 (1969); Annot., 50 A.L.R.2d 630, 633, 642 (1956); 6 Couch, Insurance sec. 31:45 (2d ed. 1961).

This court has not addressed the specific issue before us. Of those jurisdictions which have passed upon the effect of a dishonored check as payment for insurance premiums, the majority have found that, under proper circumstances, a check may act as absolute satisfaction despite the fact that the check is later dishonored. (*E.g., National Life Co. v. Brennecke* (1938), 195 Ark. 1088, 115 S.W.2d 855; *Thorson v. Wisconsin Life Insurance Co.* (1938), 227 Wis. 254, 278 N.W. 416; *Phillips v. Lagaly* (10th Cir. 1954), 214 F.2d 527.) Some jurisdictions have focused on the question of whether the insurer intended the acceptance of the check to be absolute or conditional. (*New York Life Ins. Co. v. Miller* (9th Cir. 1943), 135 F.2d 550; *Bartleman v. Humphrey* (Mo. 1969), 441 S.W.2d 335.) Other jurisdictions have viewed the determinative issue as one of waiver when it was found that the insurer intended to accept the premium check as absolute payment. (*Martin v. New York Life Ins. Co.* (1925), 30 N.M. 400, 234 P. 673.) The result under both approaches is that, absent fraud on the part of the insured, once the insurer accepts the check without evidencing an intent to

do so conditionally, it can no longer exercise its right to declare the policy lapsed due to nonpayment, even though the check is later dishonored. *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 230; *National Life Co. v. Brennecke* (1938), 195 Ark. 1088, 1095, 115 S.W.2d 855, 858; *Bartleman v. Humphrey* (Mo. 1969), 441 S.W.2d 335, 343; *New York Life Ins. Co. v. Miller* (9th Cir. 1943), 135 F.2d 550, 551; *Thorson v. Wisconsin Life Insurance Co.* (1938), 227 Wis. 254, 257, 278 N.W. 416, 417.

The classification of the acceptance as absolute or conditional is determined according to the facts and circumstances surrounding the transaction and is a question of fact to be determined by a jury or trier of fact. *Bartleman v. Humphrey* (Mo. 1969), 441 S.W.2d 335, 343; *Central States Life Ins. Co. v. Johnson* (1937), 181 Okla. 367, 369, 73 P.2d 1152, 1154; *State Life Ins. Co. v. Nolen* (Tex. App. 1930), 24 S.W.2d 22, 23.

In *Bartleman v. Humphrey* (Mo. 1969), 441 S.W.2d 335, the insured was covered by an automobile insurance policy, issued by M.F.A. Mutual Insurance Company, which was paid up through November 29, 1960. The insured received notice that a renewal premium would be due on that date. The notice included a statement that the policy would be void if a check for premium was dishonored. When the renewal premium was unpaid, the policy lapsed. The insured went to the office of the company's local agent, applied for new insurance with different coverage, and gave the agent a check to cover a three-month premium. Coverage under the new policy was to commence, retroactively, on November 29, 1960. The agent issued a 30-day binder which contained the same conditional language as the notice of renewal. The agent mailed the check and application to the company's central office, where it was accepted and processed, and a policy was printed and issued to the insured for coverage from

November 29, 1960, to February 29, 1961. The policy contained no conditional language. The check was subsequently dishonored upon presentation for payment, the insured was so advised by the insurer's letter of December 27, 1960, and was therein notified that the policy had lapsed for nonpayment of premium. The insured received this letter on January 6, 1961, and immediately forwarded a money order for the same amount. The insurance company received the money order on January 9, 1961, and reinstated the policy effective that date at 9 a.m. At 6:10 a.m. of the same day, the insured had a collision. The insurance company denied coverage of the claims arising from that accident asserting that, at the time it occurred, the policy had lapsed.

The Supreme Court of Missouri held that these facts presented a submissible case in which the jury must determine whether the check was accepted as absolute payment and stated:

> "Under such circumstances, the policy was the equivalent of an unconditional receipt, at least to the extent of raising a jury question on unconditional receipt of premium, thereby placing insurance in force with a period extending through the date of casualty." (*Bartleman v. Humphrey* (Mo. 1969), 441 S.W.2d 335, 344.)

Factors which the *Bartleman* court found indicative of the insurer's unconditional or absolute acceptance were the issuance of the policy document, the absence of conditional language within the policy, and the treatment and processing of the check as though a cash premium had been paid. See also *Martin v. New York Life Ins. Co.* (1925), 30 N.M. 400, 234 P. 673 (acceptance of a personal check and issuance of an official receipt); *Thorson v. Wisconsin Life Insurance Co.* (1938), 227 Wis. 254, 278 N.W. 416 (absence of conditional language on check receipt and the insured's reliance on the insurer's past

conduct in accepting checks as cash); *National Life Co. v. Brennecke* (1938), 195 Ark. 1088, 115 S.W.2d 855 (premium notice was marked "paid" and the good faith of the insured was shown by the fact that there were sufficient funds in his account when the check was drawn and the fact that he forwarded a money order when notified of the check's dishonor).

This court is cognizant of the fact that proof of the insurer's intent at the time it accepted the insured's check is necessarily within the control of the insurer itself. It is imperative to allow issues as to the intent of an insurer to go to the jury upon the presentation of some evidence by the insured of unconditional acceptance, inasmuch as the insured is limited in his ability to prove the opposing party's subjective state of mind.

The general rule in Illinois is that delivery of a receipt showing payment upon acceptance of a check raises a presumption that such payment has been made. (*Greenough v. Taylor* (1856), 17 Ill. 602, 603-04.) In the case at bar, the renewal policy of insurance, issued without conditional language, is, under *Bartleman v. Humphrey* (Mo. 1969), 441 S.W.2d 335, 344, equivalent to a receipt and, therefore, raises the presumption that the check was taken in absolute payment of the premium. Where the insured has introduced evidence of an unconditional receipt, the burden shifts to the insurer to show that it intended to accept the check conditionally. *Martin v. New York Life Ins. Co.* (1925), 30 N.M. 400, 407, 234 P. 673, 676; *National Life Co. v. Brennecke* (1938), 195 Ark. 1088, 1097, 115 S.W.2d 855, 859.

We hold that the facts and circumstances presented in the pleadings and affidavits were sufficient to pose for the jury or trier of fact the question of whether the insured's check was accepted by the insurer as absolute payment of the premium due or was accepted on condition of its being honored upon presentation for payment. Other facts to be

considered in deciding the question include, but are not limited to, (1) the fact that, upon receipt of the insured's check, the insurer's employee made a notation ("Reinstate 12-30-75 KJ") on the in-house copy of the insured's cancellation document; (2) the fact that the insured had sufficient funds in his checking account to cover the check when it was drawn and up to January 6, 1976; (3) the fact that the insurer received the check in question marked "insufficient funds" on either January 6 or 8 but did not return the check to the insured until January 20, 1976; and (4) the fact that upon notice by the insurer of the dishonored check, the insured immediately forwarded a cashier's check in the same amount, as evidence of his good faith.

Insurance, and particularly automobile coverage, now plays a critical role in society. Countless numbers of persons who have been injured in collisions would be dependent upon public aid were it not for the financial protection afforded by the insurance industry. Therefore, "[f]orfeiture of an insurance contract for nonpayment of premium is not favored in the law, and courts are prompt to seize upon circumstances which indicate a waiver of forfeiture." (*Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 232.) We note that other courts have taken a similar stance on insurance forfeitures. *National Life Co. v. Brennecke* (1938), 195 Ark. 1088, 1098, 115 S.W.2d 855, 859; *Martin v. New York Life Ins. Co.* (1925), 30 N.M. 400, 406-07, 234 P. 673, 675-76; *Bartleman v. Humphrey* (Mo. 1969), 441 S.W.2d 335, 343.

For the reasons stated, the judgments of the circuit court and the appellate court are reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views expressed herein.

*Reversed and remanded.*