JOE MARVIN ABBEY *et al.*, Plaintiffs-Appellants, *v.* LUMBERMEN'S
MUTUAL CASUALTY CO., Defendant-Appellee.

Fourth District    No. 15747

Opinion filed May 5, 1980.

Robert I. Auler, of Auler Law Offices, of Urbana, and Daniel King, law
student, for appellants.

Craig & Craig, of Mattoon, and Campbell, Furnall, Moore & Jacobsen, of
Mt. Vernon (Richard F. Record, Jr., Wesley J. Coulson, and John E. Jacobsen, of
counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The question here is whether an automobile insurance policy, paid for by a twice-dishonored check, was in force when the supposedly insured driver ran into plaintiff, Joe Marvin Abbey, with his car. The plaintiffs appeal from the trial court's grant of summary judgment on the defendant-insurer's counterclaim for declaratory relief, arguing that the insurer cannot deny coverage because it either unconditionally accepted the insured's check as payment or waived the forefeiture, and because it did not effectively notify the insured that his policy had been cancelled.

The plaintiffs filed their complaint April 23, 1976, seeking a declaration of the insurer's duties and liability under a policy for auto insurance, No. VZ518527, issued to Ralph Gibbs October 8, 1974. The insurer accepted a personal check for $86 from Gibbs as payment. On November 4, 1974, plaintiff Joe Marvin Abbey was injured when Gibbs ran into him with the car. On November 11, 1974, the insurer notified Gibbs that it was revoking the policy because the premium check had been returned twice for insufficient funds. The complaint also alleged that the insurer's agent had told Gibbs that the policy would take effect upon receipt of the check.

The insurer filed an answer and a counterclaim for declaratory judgment May 24, 1976, against both plaintiffs and Gibbs seeking a declaration that the policy was not in force when the accident occurred.

On July 22, 1976, the trial court granted the insurer's motion for entry of a default judgment against Gibbs on the insurer's counterclaim for declaratory judgment. The court found that the check's dishonor prevented the check from ever being effective, and so the insurer had no duty to defend Gibbs in the plaintiffs' action for personal injuries.

On August 20, 1976, the plaintiffs moved to reopen the default judgment entered against Gibbs and to dismiss the insurer's counterclaim. The trial judge denied both motions October 7, 1976, yet specifically ruled that "the default heretofore entered against the counter-defendant Gibbs in no way affects the substantive rights of Plaintiffs in this cause," limiting the effect of its decision that the policy was not in force on the day of the accident.

The plaintiffs answered the insurer's counterclaim November 16, 1976, denying that the check had been accepted conditionally.

The plaintiffs moved for summary judgment March 14, 1979; the insurer made a similar motion May 10, 1979. The plaintiffs, Gibbs and his ex-wife, and Michael Bowling, an officer at the bank on which the check was drawn, were all deposed. This information revealed that Abbey sold Gibbs the car, and the finance company wanted proof that Gibbs had insured it. The agent who sold Gibbs the policy assured Abbey that the car was covered. This was on the day when Abbey delivered the car to

Gibbs, but Abbey could not remember what day on the calendar that was. After the accident, the insurance adjuster told Abbey that the check was bad. Gibbs did not remember much; he said that his ex-wife had signed the premium check. The ex-wife admitted signing the check, but did not have much else to add. Neither mentioned any assurances by the agent regarding the effective day of coverage, or statements concerning the conditional or absolute receipt of the payment. Bowling, the bank officer, said that the checking account statement for the Gibbses' account showed that the $86 check had been presented for payment twice: on October 18 and October 31. Both times the check was returned because the account did not contain funds sufficient to cover the amount of the check.

The trial court issued a memorandum opinion and order May 24, 1979. The court found that the payment was conditional, that the insurer had not waived the forfeiture by presenting the check a second time, and that notice of cancellation of the policy did not need to precede the effective date of cancellation. On this basis the court denied the plaintiffs' motion for summary judgment, granted the insurer's motion, and declared that the policy was not in force on November 4, 1974, the day of the accident. The plaintiffs timely filed a notice of appeal June 6, 1979.

On June 25, 1979, the same court meaninglessly issued another declaratory judgment in the same case; this has no effect, for the earlier opinion and order granting summary judgment was final and appealable, and the plaintiffs' appeal from that divested the trial court of jurisdiction over the case. The substance of the second order does not differ from what the court declared in its previous decision. The plaintiffs timely filed an unnecessary notice of appeal from this later order July 25, 1979.

■■ The Illinois Supreme Court dealt with this precise point in its recent opinion in *Cullotta v. Kemper Corp.* (1979), 78 Ill. 2d 25, 397 N.E.2d 1372. As in this case, *Cullotta* involved a dishonored premium check and a loss that occurred before the insured received notice that the insurer had cancelled his coverage. Insurance forfeitures are disfavored because insurance serves an important function in contemporary society: the broad sharing of risks and losses helps alleviate the expense of misfortune. Thus, even in doubtful cases, courts should be quick to find facts supporting coverage. (*Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 255 N.E.2d 453.) In *Cullotta*, the court advanced two related theories that would support a finding of coverage, reversed the entry of summary judgment for the insurer, and remanded the cause for a trial on the merits. The first theory is that the insurer accepted the premium check unconditionally. Payment by check is ordinarily regarded as conditional: the condition is that the check will be honored when presented for payment. (Ill. Rev. Stat. 1977, ch. 26, pars. 2—511(3), 3—802.) Yet in certain types of cases, such as those involving

insurance, a different result is often desirable. When an insurer accepts the premium absolutely, the insurance contract is formed then, and the insurer cannot deny coverage even if the check is later dishonored. The insurer still has an action on the amount of the check, of course. Facts pointing to an unconditional acceptance include the absence of language in the policy referring to conditional acceptance, and the issuance of a receipt showing payment upon acceptance of the check. A receipt raises the presumption that full payment has been made. The supreme court cautioned that the insured will often find proving the insurer's intent difficult at best, and advised, "It is imperative to allow issues as to the intent of an insurer to go to the jury upon the presentation of some evidence by the insured of unconditional acceptance, inasmuch as the insured is limited in his ability to prove the opposing party's subjective state of mind." *Cullotta*, 78 Ill. 2d 25, 32, 397 N.E.2d 1372, 1376.

Should the insured be unable to show an unconditional acceptance, a second theory may support a finding that insurance coverage was effective at the time in question: The insurer may have waived the forfeiture. The insurer's conduct after receiving the check may support the inference that it has waived the forfeiture of coverage that would otherwise follow dishonor of the check under the conditional payment rule. For example, retaining the check after its dishonor may amount to a waiver. In *Cullotta*, the insurer presented the check only once before notifying the insured that his policy was not in force. Yet insurers often present a check more than once; the cases are split on whether this multiple presentment constitutes a waiver of the forfeiture. *Security Trust Co. v. Mutual Life Insurance Co.* (E.D. Ky. 1943), 48 F. Supp. 779, refused to find a waiver and referred to the insurer's second presentment of the check as an "indulgence." Other courts, however, have found waivers in precisely the same situations. (*Stone v. Brady Mutual Life Insurance Association* (Tex. Civ. App. 1927), 2 S.W.2d 538; *Inter-Ocean Casualty Co. v. Anderson* (1944), 245 Ala. 534, 17 So.2d 766.) Furthermore, delay in informing the insured of the check's dishonor has been interpreted as a waiver of the forfeiture; when the loss or casualty occurs between the time the check is returned to the insurer and the time the insurer notifies the insured of the dishonor, the delay has clearly cost the insured the opportunity to make the check good or secure coverage elsewhere. (*New York Life Insurance Co. v. Miller* (9th Cir. 1943), 135 F.2d 550.) In that situation, failing to find that the forfeiture has been waived permits the insurer to gamble on the check's eventual honor, at the insured's expense.

In this case, several facts would support a finding under either theory: that the insurer accepted the check unconditionally, or in the alternative, that the insurer waived the forfeiture. Here the policy says that coverage

began October 8, 1974, which was the day Gibbs gave the insurance agent the check. The plaintiffs also allege that the insurer said that coverage would begin then. With the absence of policy terms conditioning coverage on the check's clearing, the plaintiffs' evidence here satisfies the burden imposed by *Cullotta*. Summary judgment therefore was improper.

Other allegations support a finding that if the insurer accepted the check only conditionally, its later conduct amounted to a waiver of the forfeiture. The insurer presented the check twice—October 18 and October 31—but did not notify the insured until November 13, well after the injury occurred, that coverage had been cancelled. Thus, the delay caused by presenting the check again and the delay in notifying the insured of the policy's termination thus would inexcusably leave the insured without coverage, unless a waiver is found.

■ Under either theory—conditional acceptance or waiver of the forfeiture—the plaintiffs' complaint presents triable issues of fact, and the trial court therefore erred in granting the insurer summary judgment.

■ The plaintiffs also argue the twin propositions that cancellation is ineffective until notice is given and that improper notice is ineffective. Yet none of the statutes in force during the relevant times supports the plaintiffs' argument that advance notice of cancellation was necessary. The letter of cancellation announced that the policy had never been in force. One statute required 10 days' notice prior to cancellation but applied only to policies a year or more old. (Ill. Rev. Stat. 1973, ch. 73, par. 755.1b.) Another statute requiring advance notice was limited to renewal policies and to policies that had been in effect for 60 or more days. (Ill. Rev. Stat. 1973, ch. 73, par. 755.3.) Neither statute is applicable here, because Gibbs' policy was only a little more than a month old when cancelled and was not a renewal.

Reversed and remanded.

TRAPP and WEBBER, JJ., concur.