THOMAS SELBY ET AL., Respondents, v. D. W. McCUL-
LOUGH ET AL., Appellants.

### St. Louis Court of Appeals, May 3, 1887.

1. PARTNERSHIP, WHAT CONSTITUTES—CONTRACTS.—Whether persons
are liable as co-partners, does not depend upon the fact of their
partnership *inter se,* but they may become such as to third persons
upon proof that they held themselves out as partners.

2. PAYMENT—EVIDENCE OF.—The taking of a check or note in settle-
ment of an account or antecedent debt is not a payment thereof,
unless it is so understood or agreed at the time.

3. BANKS AND BANKING—PRESENTMENT OF CHECK.—Where the drawer
and the payee of a check reside at different places, and the facts
tending to show diligence and negligence respectively, are con-
flicting, the question, as to what is a reasonable time for the pre-
sentment, may be properly submitted to the jury under appro-
priate instructions.

APPEAL from the Laclede County Circuit Court, W.
J. WALLACE, Judge.

*Affirmed.*

A. L. ROSS and D. E. WRAY, for the appellants :
There was no partnership. 3 Addison on Cont. 363. It
was the duty of the plaintiffs to present the check at
the bank on which it was drawn, within a reasonable
time after receiving it, and, in case of dishonor, to give
the drawer notice within a likely reasonable time ; other-
wise, the delay is at his own peril. Story on Prom.
Notes ( 5 Ed.) sect. 493, pp. 650-1-2 ; *Salisbury v. Ren-
ick,* 44 Mo. 554 ; *St. John v. Homan,* 8 Mo. 382.

J. P. NIXON, for the respondents : The taking of a
check or note for a debt, constitutes, in law, no pay-
ment, unless there is an express agreement to that
effect. *Wiles v. Robinson,* 80 Mo. 47 ; *Riggs v. Good-*

*rich*, 74 Mo. 108. The variance; if any, between the allegations of the petition, that the defendants purchased the sheep, and the proof that they purchased them as partners, is wholly immaterial after verdict. The defendants did not comply with the statute in such cases, filed no affidavit, and can not now be heard to complain. Rev. Stat., sect. 3565; *Hollfield v. Black*, 20 Mo. 328; *Olmstead v. Smith*, 87 Mo. 602; *Meyer v. Chambers*, 68 Mo. 626; 8 Mo. App. 600.

THOMPSON, J., delivered the opinion of the court.

This action was brought in the circuit court for sixty dollars, the price of thirty head of sheep alleged to have been sold and delivered by the plaintiffs, who were co-partners, to the defendants. The defendants answered separately. The defendant, Moss, filed an answer, the substance of which was, that he and the other defendant were not co-partners, and which denied that the sheep were sold and delivered to him, jointly with the other defendants, or individually, and which denied any indebtedness on account of the sale. The answer of the defendant, McCullough, denied that the co-partnership existed between him and the defendant, Moss, or that they bought the sheep as partners; but alleged the facts to be, that he, McCullough, bought the sheep of the plaintiffs and paid for them in full. A trial before a jury resulted in a judgment and verdict for the plaintiffs against both defendants, for the amount claimed, with interest.

At the trial, there was evidence tending to show that the two defendants represented themselves as partners in the purchase of the sheep, and in this character purchased the sheep of the plaintiffs for the agreed price of sixty dollars, and that, in lieu of cash, the defendant, McCullough, gave to the plaintiffs his check for the sum of sixty dollars, upon the Morgan County Bank, of Versailles, Mo.; that the plaintiffs entrusted the check for collection to H. H. Wind, who was

about to attend a political convention at Sedalia, on which errand he would have to pass through Versailles. The plaintiffs gave evidence, tending to show that they objected to taking the check, but were assured that it would be cashed as soon as presented, and that the defendants would guarantee the payment of the money upon it, and that "McCullough and Moss agreed that H. H. Wind should take the check when he went up to the democratic convention, and get the money for us." Evidence was, also, given which tended to show that the sale took place on the fourth day of August; that the check was given to Wind on the thirteenth or fourteenth day of August; that Wind passed through Versailles on the fifteenth day of August, but did not present the check to the bank until the nineteenth or twentieth day of August, when he was on his way back from the convention at Sedalia. The reason given by Wind, why he did not call for the money as he went to the convention, was, that he did not want to carry it around. When Wind presented the check, the manager of the bank told him that they had no funds; that their funds were all in St. Louis; that they were looking for money that day, and that they could not do any better for him than to give him St. Louis exchange, unless he would remain over until the next day. Wind objected to this, but finally consented to take St. Louis exchange, and, thereupon, the bank drew him its bill of exchange on the Laclede Bank, of St. Louis, for the sum of sixty dollars. Wind brought this draft of the Morgan County Bank on the Laclede Bank of St. Louis, to one of the plaintiffs in person, and explained to him the transaction. The latter took the draft and said that he would rather have the money, but excused Wind for taking the course he did. The plaintiffs negotiated the draft to one McIntire, and received the face value of it; the latter sent it to St. Louis for collection; it was returned protested, and the plaintiffs took it out of the hands of McIntire, and, so far as appears, still held it at the time of the

trial. The Morgan County Bank closed its doors and became "utterly and entirely insolvent," on the twenty-third day of August. The evidence shows, without dispute, that when the defendant, McCullough, drew the check upon the bank, and when the check was presented to the bank, the state of McCullough's account with the bank was such that the bank was bound to pay the check. That was not controverted, and the book-keeper of the bank, who, in the presence of Wind, examined McCullough's account, reported that it was "O. K." It was also testified to, by McCullough himself, and there was no opposing evidence. Wind passed through Versailles on his way to the convention on the fifteenth day of August, and might, so far as the evidence discloses, have collected the check on the same day, if the bank had had funds on that day wherewith to pay it. But upon this point the evidence is entirely silent. There was no direct evidence as to the condition of the bank, between the thirteenth and fourteenth days of August, when the check was given, and the nineteenth and twentieth days, when it was presented.

I. The question whether a partnership existed between the two defendants and whether the sheep were purchased on their partnership account, does not depend, as the defendants' counsel argue, upon the question whether the defendant, Moss, was a part owner in the property of the common venture. The defendants' evidence tended to show that the two had entered into an arrangement by which McCullough was to purchase sheep, and Moss was to keep them for a share in the increase. Although this might not have constituted a partnership between McCullough and Moss *inter se*, yet it did not prevent them from holding themselves out to third persons as partners, and rendering themselves liable to third persons as such. Now, the plaintiffs' evidence tended to show that they did so hold themselves out to the plaintiffs, and the court gave an instruction to the effect that if they did so hold themselves out, this

would make them jointly liable to the plaintiffs. There does not, therefore, seem to be any available error in the rulings of the court on this point.

II. The court submitted the case to the jury upon instructions to the effect that, if the draft given by Mc-Cullough, to plaintiffs, was presented by the plaintiffs to the Morgan County Bank within a reasonable time, and payment therefor refused by the Morgan County Bank, the plaintiffs could recover. These instructions were in accordance with the well known rule that, one who accepts a check upon a banker, in settlement of an indebtedness, is bound, in order to hold the drawer of the check, to present the check to the banker for payment within a reasonable time, and that what will be a reasonable time will depend upon the circumstances of each particular case. In *Dyas v. Hanson* (14 Mo. App. 363), this court held, after much consideration, that, where the facts are clear and uncontradicted, what is reasonable diligence in presenting a check or draft for payment is a question of law for the court, though if the court submit it to the jury and they decide it rightly, the error will not afford ground of reversing the judgment. In this case both parties requested instructions which submitted the question to the jury, and we can not say, in view of the evidence, that the jury have decided it wrongly. In the first place, if the evidence of the plaintiffs is true, Wind was selected by an agreement between the elder Mr. Selby and the defendant, McCullough, to present the check for payment. This would make him the agent of both parties, and the plaintiffs would not be answerable for his negligence if he were guilty of any, any more than the defendants would. In the second place, the question whether Wind was guilty of negligence is to be determined in part by the consideration that he was a gratuitous bailee, acting merely for the accommodation of a neighbor. Moreover, the question is to be determined in view of the facts as they *then* appeared to

him, not by the facts which subsequently arose. No
suspicion of insolvency on the part of the bank ex-
isted when he passed through Versailles on the way to
the political convention. The reason given by him
for not collecting the money then, that he did not
want to carry it around, seems, under the circumstances,
to have been a good reason. Certainly, ordinary expe-
rience would suggest that a sum of money in a solvent
bank is safer than in the pocket of one attending a
political convention, where he might, in consequence of
the presence of a large crowd of people, be compelled
to lodge in a room with strangers, and where other cir-
cumstances might increase the risk of the money being
lost or stolen. It is to be further considered that the
plaintiffs are not to be viewed as the courts would view
a business man, who is in the habit of receiving and
presenting checks and drafts for payment every day.
The elder Mr. Selby, with whom the transaction was
had, was a farmer, living in a remote section of the
country, at a considerable distance from any bank, and
was probably unacquainted with business usages and
with the principles which exact business diligence
under given circumstances. While his ignorance of the
law would not excuse a plain case of negligence, yet the
circumstances of his situation, manifestly, are to be taken
into consideration in determining whether he has been
guilty of negligence or not; and we have no difficulty
in saying that it would be a hard and unjust rule which
would make him answerable for the delay in presenting
the check, under the circumstances of this case, by the
neighbor to whom, owing to the great distance and lack
of other communication, he seems to have been obliged
to entrust the check for presentment.

III. Complaint is made of the fourth instruction
given at the instance of the plaintiff, which was as fol-
lows :

"The court instructs the jury that they will find
the issue as to payment for the plaintiffs, unless the

jury find, from the evidence, that, at the time the plaintiffs took the check on the Morgan County Bank, it was agreed between the plaintiffs and the defendants, that such check should constitute a payment ; or unless you find that the plaintiffs were negligent in presenting the said check for payment, and that, thereby, the check was not paid.''

This instruction seems to have submitted to the jury the proper rule of law, applicable to the hypothesis embraced in it. It is settled law in this state that the taking of a note or bill of exchange is not payment, unless the creditor expressly agrees to take it as payment and to run the risk of its being paid. *Appleton v. Kennon*, 19 Mo. 641 ; *Leabo v. Goode*, 67 Mo. 126 ; *Riggs v. Goodrich*, 74 Mo. 112 ; *Commiskey v. McPike*, 20 Mo. App. 82 ; *Steamboat v. Hammond*, 9 Mo. 59 ; *Citizen's Bank v. Parson*, 32 Mo. 191 ; *Howard v. Jones*, 33 Mo. 583 ; *McMurray v. Taylor*, 30 Mo. 263. It is, also, the law, as declared in the above instruction, that one who takes a check for an antecedent debt, which check is not paid, may recover the debt of the drawer of the check, unless the holder of the check was negligent in presenting it for payment, and unless its non-payment was the result of such negligence. *Chouteau v. Rowse*, 56 Mo. 67 ; *Morrison v. McCartney*, 30 Mo. 183.

It is argued, on behalf of the defendants, that, in order to hold McCullough liable on the check it was not only necessary to present it to the bank within a reasonable time, but, in the event of its non-payment, to protest it and give McCullough notice of its dishonor. This argument is only partially correct. A check is, at most, an inland bill of exchange, and there is no necessity for a protest of an inland bill of exchange. *Jaccard v. Anderson*, 37 Mo. 91. It may be conceded that the drawer of a check is entitled to notice of its non-payment within a reasonable time, in order that he may take any steps which are available to him to protect his

interest. *Stam v. Kerr*, 31 Miss. 199. If this had been a suit upon the check, the defendant would have been entitled to have an instruction upon this theory. The court was liberal in giving such instructions as the defendants requested. We discover that the learned judge gave all the instructions which they requested, to one of which they were clearly not entitled.

This instruction was as follows:

"The court instructs the jury that, although they may believe, from the evidence, that the defendants, McCullough and Moss, were both parties to the purchase of the sheep mentioned in the plaintiffs' petition; yet, if the jury further find that the defendants, or either of them, gave to the plaintiffs a check on the Morgan County Bank for the amount of the purchase price of said sheep, that the plaintiffs accepted said check and presented the same to the bank while the defendant, McCullough, had funds on deposit in the said bank sufficient to pay the same, and the plaintiffs accepted St. Louis exchange from the said bank for the amount of said check, and agreed to receive said St. Louis exchange in full payment for said sheep, then they will find for the defendants."

There was no evidence that the plaintiffs agreed to receive the St. Louis exchange in full payment of the check, and, consequently, no hypothesis on which to base the latter clause of this instruction. If the defendants were, in point of fact, prejudiced by the conditional delay of three or four days, which supervened between the acceptance of the exchange, drawn by the Morgan County Bank of St. Louis, and the total suspension of the bank, it seems they should have requested the court to submit an instruction on that hypothesis to the jury. By accepting the draft of the Morgan County Bank on St. Louis, without a distinct agreement that it should be payment, it did not become payment, although, as the defendants did not consent to this, it may have been a circumstance exonerating them from liability to the plaintiffs on the original demand, on the ground of

negligence, on the same principle on which the negligence of the plaintiffs, in presenting the check for payment to the Morgan County Bank, may have exonerated them. But we do not understand it to be the law that, by accepting this bill of exchange, and surrendering up the check, without more, the plaintiffs agreed that the check should be considered paid, and estop themselves from recourse upon the defendants in case of the dishonor of the bill of exchange. It has been held, in New York, that the acceptance of a check, by the payee of a draft, and the surrendering of the draft, does not operate as payment of the draft, unless there is a special agreement to that effect. *Johnson v. Bank*, 5 Rob. (N. Y.) 554; *Smith v. Miller*, 6 Rob. (N. Y.) 413; *Ketty v. Bank*, 52 Barb. 328. And, while it is true, that one who takes a negotiable instrument in payment of a debt, which instrument is not paid, can not recover on the original debt without producing the negotiable instrument (*Steamboat v. Lumm*, 9 Mo. 64), and although it does not appear whether the protested bill of exchange has been tendered to the defendants, yet they do not make any objection on that ground, but they argue that, as the plaintiffs had the right to demand the payment of the check of the Morgan County Bank according to its tenor, and, instead of insisting upon cash payment, received a credit of that bank, and surrendered up the check, they lost their remedy, if they had not already lost it by negligence, against McCullough, on the ground that the drawer of the check was entitled to notice of its dishonor. But this is not true as matter of law. The holder can not object to delay in presenting the check, unless he shows some special injury to himself therefrom. *Keene v. Beard*, 8 Com. B. N. S. 372; *Emery v. Hobson*, 63 Me. 32; *Stewart v. Smith*, 17 Ohio St. 82; *Smith v. Jones*, 2 Bush (Ky.) 103; *Woodin v. Frazee*, 6 Jones & S. 190. In this case we can not even see any evidence of special injury. There is no evidence, in the record, that the bank was in a better condition to pay

the check, or that it would have paid the check, if it had been presented by Wind without the delay of five days. For aught that appears, it may have been prolonging its existence without funds, by methods, such as this case discloses, for the preceding five days, the same as it seems to have done during the succeeding three days before it finally collapsed    The burden of making good his defence of payment was upon the defendant, Mc-Cullough, and he has failed to show a state of facts which enables us to say, as matter of law, that he either made payment, or that something was done which, in law, is tantamount to payment.

Seeing no error in the record, we affirm the judgment. It is so ordered. All the judges concur.