Ralph O. **BARTLEMAN**, Respondent,

v.

Richard King **HUMPHREY**, Defendant,

**M. F. A. Mutual Insurance Company,**
**Garnishee-Appellant.**

No. 53783.

Supreme Court of Missouri,
Division No. 1.

May 12, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied June 9, 1969.

J. David Collins, Hadley E. Grimm and Edwards, Hess & Collins, Macon, Walter Allen, Brookfield, for respondent.

Somerville, Cleaveland & Macoubrie, Ronald L. Somerville, David P. Macoubrie, Chillicothe, for appellant.

HIGGINS, Commissioner.

Garnishment under execution on $27,000 default judgment in favor of Ralph O. Bartleman against Richard King Humphrey in personal injury action. Garnishee-appellant was the liability insurer of defendant Humphrey and seeks relief from jury verdict and judgment in the garnishment proceeding for $33,471.89, principal and interest.

On September 8, 1962, Ralph O. Bartleman sued Richard King Humphrey for damages for personal injuries and property loss in an automobile collision which occurred about 6:10 a.m., January 9, 1961. Garnishee refused to defend the suit. On January 21, 1964, default judgment was entered in favor of Bartleman and against Humphrey for $27,000 and costs. Execution, issued April 13, 1964, was served on M.F.A. Mutual Insurance Company by garnishment of proceeds of insurance policy No. 24-1-354346-01 with policy period from 10 a.m., November 29, 1960, to 12:01 a.m., February 29, 1961, issued by M.F.A. to Richard King Humphrey. Interrogatories exhibited to M.F.A. by Bartleman inquired whether M.F.A. was indebted to Humphrey; whether Humphrey had a policy of automobile liability insurance in force at 6 a.m., January 9, 1961, and whether M.F.A. was obligated to pay judgments against Humphrey under policy no. 24-1-354346-01 during its period. Garnishee's answers were a denial of these inquiries, asserting as its reason, failure on the part of Humphrey to pay the premium. Bartleman's denial of M.F.A.'s answers to his interrogatories alleged that although an $11.45 check tendered for the premium was not honored due to insufficient funds in the account, the policy in issue was in effect at the time of the accident because M.F.A. is estopped to deny the coverage in that it waived punctual payment of the premium, it induced Humphrey to believe the policy was in force, and it accepted the check as unconditional payment of the premium. M.F.A.'s reply admitted the collision, denied the alleged coverage, and reiterated its reason for denial, nonpayment of premium.

Respondent's case was submitted by Instruction 2:

"Your verdict must be for plaintiff Ralph Bartleman and against Garnishee M.F.A. Mutual Insurance Company if you believe:

"First, Garnishee M.F.A. Mutual Insurance Company treated the check as payment of the premium on the policy issued December 9, 1960, or

"Second, Garnishee M.F.A. Mutual Insurance Company delayed unreasonably in presenting the check to the Bucklin State Bank and such delay was prejudicial to defendant Humphrey."

Appellant's theory of the case was submitted by Instruction 3:

"Your verdict must be for Garnishee, MFA Mutual Insurance Company, and against Plaintiff, Ralph O. Bartleman, if you believe:

"First, the check dated November 29, 1960, in the amount of $11.45, made payable to MFA Mutual Insurance Company was never honored or paid by the Bucklin State Bank, and

"Second, Garnishee, MFA Mutual Insurance Company, did not accept the dishonored and unpaid $11.45 check as payment of the premium regarding said policy mailed to R. K. Humphrey and/or Nadine Humphrey at Bucklin, Missouri, on December 13, 1960, and

"Third, Garnishee M.F.A. Mutual Insurance Company notified R. K. Humphrey and/or Nadine Humphrey before 6:00 o'clock a.m. on January 9, 1961, that said policy mailed to them on December 13, 1960, had lapsed because the premium on said policy had not been paid."

Appellant contends that its motion for directed verdict should have been sustained because respondent failed to make a submissible case. The argument is that respondent failed to prove that defendant Humphrey paid any consideration for the policy in issue; that appellant accepted the check for $11.45 as unconditional payment of the premium; that appellant waived conditional acceptance of the check; that appellant was estopped from asserting that the check was not received as unconditional payment; that appellant induced defendant to believe the policy was in force at the time in question.

These cases usually have bizarre circumstances, and this is no exception. In September, 1960, Richard Humphrey and his wife, Nadine, moved from Prairie Home to Bucklin, Missouri, where Richard had a job with Leathers Grain Company. They lived on a farm about four miles from Bucklin, and he worked for Leathers for about a month. They owned a 1958 Plymouth which was insured by M.F.A. under a policy, Exhibit 1, which had a policy period from 12:01 a.m., May 29, 1959, to 12:01 a.m., November 29, 1959, and which had been kept in force by payment of specified renewal premiums to expire at 12:01 a.m., November 29, 1960. In November, 1960, the Humphreys received, Exhibit A, appellant's "Renewal Certificate" with notice of renewal premium due on or before 12:01 a.m., November 29, 1960. The renewal certificate would, upon payment of premium, extend coverage to 12:01 a.m., May 29, 1961, and provided that it was void if the renewal premium were not received by 12:01 a.m., November 29, 1960, or if a check for premium were dishonored. The Humphreys did not pay the premium described in the renewal certificate and, as a result, the policy to which it related expired at 12:01 a.m., November 29, 1960.

In lieu of the renewal of that policy, Mrs. Humphrey went to the office of appellant's agent in Bucklin, J. W. Ralston, to arrange for new insurance with different coverage. Mr. Ralston prepared Exhibit 2, "Application For Change—Automobile—MFA Mutual" which, with respect to premium payment, said, "Attach check," and which Mrs. Humphrey, with Richard's authority, signed, and which contained a 30-day binder executed on behalf of M.F.A. by Mr. Ralston. Mrs. Humphrey gave Mr. Ralston a check, Exhibit 3, on the Bucklin State Bank, dated November 29, 1960, for $11.45, to cover premium for 3-months' coverage from 10 a.m., November 29, 1961. The Humphrey's bank statement, Exhibit B, showed a balance November 26, 1960, of $13.20, with no withdrawal until sometime November 29, 1960, when a check for $2.20 was paid. On December 1, 1960, withdrawals left a balance of $0.34; balance December 2, 1960, was $0.09; and on January 23, 1961, it was $0.00. A $65.-

00 deposit was made February 11, 1961. The binder portion of the application provided for the binder to be effective upon execution by an authorized agent and to be void if any check tendered in payment of premium were not honored. Mr. Ralston mailed the check and application to appellant's office in Columbia, Missouri; they arrived there Thursday, December 1, 1960. The usual course of processing such check and application (one of approximately 5,000 per day) was to send them to the filing department for the policy folder and then forward the three items to the policy service department for review and preparation of a work sheet showing changes. All items went next to the I.B.M. department for punch cards which result in the printing of the policy and arrangement of premium reserve. The policy in issue, Exhibit 4, described in the application, was thus printed December 9, 1960. It had a policy period from 10 a.m., November 29, 1960, to 12:01 a.m., February 29, 1961. The policy was mailed by appellant to the Humphreys at Bucklin December 13, 1960, and they accepted it upon receipt. No other item was in the mailing envelope. On the same date, December 13, appellant deposited the $11.45 check in its account and the endorsement stamp indicates "for deposit only."

The policy in question does not contain the language of the renewal certificate and binder, i.e., it does not say that it is effective only upon condition the premium was paid. Its recital in this respect is: "In reliance upon the Declarations * * *, and for payment of the premium * * *, MFA Mutual Insurance Company * * * agrees with the named insured * * *." Cancellation right is given to the insurer by the policy upon giving written notice to insured not less than ten days prior to the effective date of cancellation. No such notice was ever sent or received. The policy stated that it embodied all of the agreements between insurer and insured.

Boone County National Bank, upon receiving appellant's deposit, sent the $11.45 check in the usual and customary channel for collection to Mercantile Trust Company in St. Louis which processed it through the Federal Reserve Bank in St. Louis which sent it to Bucklin State Bank which refused to pay it December 16, 1960, for lack of sufficient funds. The check was returned through the channel to Mercantile which sent it on December 18, 1960, to Bucklin State for collection resulting in a second refusal. Mercantile received the check after second refusal December 22, 1960, and Boone County received it December 23, 1960. Boone County, on Friday, December 23, 1960, notified M.F.A. that the check had not been paid and M.F.A. retrieved the check that date. Between December 13 and December 23, 1960, when it was charged for the check, M.F.A. had credit with Boone County for the $11.45. Boone County had never instructed Mercantile to process the check twice. When the check was returned, the amount was deducted from premium reserve by M.F.A.

December 23, 1960, was Friday and, due to Christmas, appellant's next working day was Tuesday, December 27, 1960. Around December 24, the Humphreys and their children went to Silex, Missouri, to spend the Christmas holidays. They did not return to the Bucklin farm until the night of January 1, 1961, the night before the children were to return to school. Mrs. Humphrey collected all accumulated mail from the mailbox that night and opened it the next morning.

M.F.A. returned the dishonored check to the Humphreys at Bucklin by letter, Exhibit 6, dated December 27, 1960, which stated, among other things:

"Since the check was not honored on presentation, the premium is not paid and your policy has lapsed or will lapse as of 10:00 A.M. on the date the premium was or is due.

"Consideration will be given to the reinstatement of your policy upon payment of the premium." Only the November 29,

1960, to February 29, 1961, policy had a period with a 10:00 a.m. time provision.

It was stipulated that mail deposited in the United States post office in Columbia, in December and January, 1960 and 1961, would be delivered to an addressee in Bucklin the following day; however, according to Mrs. Humphrey, Exhibit 6 was received by the Humphreys "around the 6th" of January, 1961. She was "positive" that the letter was not in their mailbox upon their return home from Christmas vacation at Silex.

On Friday, January 6, 1961, in response to the M.F.A. letter, Mrs. Humphrey went to the Bucklin post office and purchased a money order for $11.45. She took it home and wrote, as of January 6, 1961, on the back of Exhibit 6:

"Dear Sirs:

"Am so sorry that the check I sent to you in November of 1960 did not clear at the bank.

"Enclosed find money-order to cover the amount." She mailed the check and Exhibit 6 containing her note to appellant from Bucklin at 7:30 a.m., January 7, 1961. Mr. Humphrey could not recall when he read Exhibit 6 but he then knew he owed "M.F.A. money for insurance."

The money order arrived at appellant's office in Columbia after 8 a.m., Monday, January 9, 1961, and it and Exhibit 6 were sent to the automobile underwriting department with a notation made on Exhibit 6: "Nancy, reinstate effective 1–9–61–9:A.M."

Mr. Humphrey's first day on a new job with National Car Loading in Kansas City, Missouri, was to be January 9, 1961, and, while driving from Bucklin to Kansas City at about 6:10 a.m., that date, he had the collision with Mr. Bartleman. On that or the following day, Mr. Humphrey was in Mr. Ralston's office and advised him of the collision and that his 1958 Plymouth had been towed to a junkyard as a total loss. While in Ralston's office, M.F.A.'s

adjuster came in and he, too, was told of the collision and total loss of the Plymouth. By letter of January 12, 1961, to the Humphreys, M.F.A. acknowledged being "advised that your automobile was involved in an accident on January 9, 1961, at 6:10 A.M. * * *" and stated that their policy had lapsed November 29, 1960, and "was reinstated upon receipt of the premium on January 9, 1961, at 9:00 A.M." The letter then denied coverage of claims arising from the accident.

The money order sent with the note on Exhibit 6 January 7, 1961, was cashed by M.F.A. by deposit in Boone County National Bank January 13, 1961, and it has kept the money. Also on January 13, 1961, after total wreck of the 1958 Plymouth, M.F.A. issued a new policy of insurance purporting to cover the 1958 Plymouth with a policy period from 9 a.m., January 9, 1961, to 12:01 a.m., April 9, 1961. This policy was mailed January 17, 1961, and was received by the Humphreys in Bucklin January 18, 1961. Sometime in late January they substituted a 1957 Plymouth and renewed the policy at least twice. The Humphreys had made no further application for new insurance after the November 29, 1960, application in Mr. Ralston's office which resulted in the policy in question, Exhibit 4, for which Mrs. Humphrey gave the check which she paid by money order mailed January 7, 1961. They had never failed to pay any previous premium, and they had never paid by a check subsequently dishonored.

Under Section 491.030, V.A.M.S., respondent called Phil Dysart who, at trial, had been with M.F.A. over 19 years and who, in November and December 1960, and January 1961, was manager of M.F.A.'s policy service department in the automobile division. He was policy services manager for 14 years with duties of supervising employees in issuance of new policies and changes affecting coverage, periods, and application for new policies for previous insureds. He was assistant director of training at trial time. Mr. Dysart's deposi-

tion, along with those of Mr. Moseley from accounting and Mr. Barnes from automobile underwriting, were taken January 7, 1967. He conceded he had had ample time to confer with counsel and consider his answers. On the night before trial, Mr. Dysart changed some of his answers with "reason given by witness for changes was to make the answers complete and accurate." The deposition was signed by the witness prior to trial.

Respondent used original answers in the deposition to adduce evidence that the $11.-45 check had been entered as a paid premium; that the policy was not issued until a premium was paid; that the records showed premium paid prior to issue of Exhibit 4, the policy in question; that M.F.A. issued the policy only when the premium was paid; and that premium reserves were set up as though cash had been paid. Upon direction by the court, respondent also read the answers as corrected which contained added language that "if a check is involved the policy is issued (and premium reserves are credited) subject to the check being honored and paid."

Mr. Dysart also testified that the IBM cards were punched as though the premium had been paid in cash; that the declaration page and premium reserve were handled as though the premium had been in cash; that the agent's commission was handled as a cash premium situation; that from December 1 until December 22, 1960, this transaction was handled by MFA in every respect as if the premium had been paid in cash. According to him, the reference to "renewal premium" in the policy declarations was the premium to become due prior to February 29, 1961, and that when the policy was issued December 9, 1960, the binder was no longer effective and that its reference to coverage being void if a check were not honored was not in the policy.

Resolution of appellant's contention that it was entitled to a directed verdict on the ground respondent failed to make a submissible case suggests, at the outset, recog-

nition of certain familiar propositions and authorities cited by the parties:

 The law of contracts applies to an insurance policy; any claim or suit by either party must be based on the policy issued, Hartford Acc. & Indem. Co. v. Farmington Auction, Inc., Mo.App., 356 S.W. 2d 512, 519[5]; and payment of a first premium is a condition precedent to validity of the policy, Fernan v. Prudential Ins. Co. of America, Mo.App., 162 S.W.2d 281.

 In absence of agreement to the contrary, delivery of a check to a creditor and his acceptance of it is not payment of the debt or obligation until the check has itself been paid, and when the check is not paid, it may not be said to have constituted payment of the debt or obligation for which given. G. F. C. Corp. v. Nesser, Mo., 273 S.W.2d 264, 267–268[1]; Komosa v. Monsanto Chemical Co., Mo., 317 S.W.2d 396, 402[10]; Le Page v. Metropolitan Life Ins. Co., Mo., 314 S.W.2d 735, 738[3]. This rule extends to transactions under insurance law which contemplates that insurance premiums are ordinarily to be paid in cash. Martin v. Illinois Bankers Life Assur. Co., Mo.App., 91 S.W.2d 646, 649[1]. Where a creditor takes a check from his debtor, the presumption is that it has not been taken in absolute payment, and the burden to show that the creditor agreed to take the check as payment is upon the debtor. Hickerson v. Con Frazier Buick Co., Mo.App., 264 S.W.2d 29, 33[6]. Agreement to take a check as payment need not be a written agreement, nor an express oral agreement, but may be proved by facts and circumstances which show that it was the intention of the parties that a check was to constitute absolute payment, Griffin v. Priest, Mo.App., 137 S.W. 2d 685, 687[1, 2], G. F. C. Corp. v. Nesser, supra, and a mutual understanding or agreement to accept a check as absolute or unconditional payment of a debt or obligation such as an insurance premium may be implied from the circumstances and conduct of the parties. G. F. C. Corp. v.

Nesser, supra; New York Life Ins. Co. v. Miller, 9 Cir., 135 F.2d 550, 551[2]; Anno: Insurance Premium—Check as Payment, 50 A.L.R.2d 630, 643, § 4. The intention of the parties to treat a check as absolute or unconditional payment is a jury question. Wriggelsworth v. Lott, 307 Mich. 161, 11 N.W.2d 843, 845[4]; Hockert v. New York Life Ins. Co., Ia., 276 N.W. 422, 424[5]; 40 Am.Jur. 904, Payment, § 298.

■■■■ "Waiver" has been defined as an intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible. Lucas Hunt Village Co. v. Klein, 358 Mo. 1054, 218 S.W.2d 595, 599[8]. In insurance cases, intention to waive must plainly appear or else the acts or conduct relied upon constituting waiver must involve some element of estoppel, State ex rel. Continental Ins. Co. of City of New York v. Becker, Mo., 77 S.W.2d 100, 105[4], for which elements, see Hamilton v. Northeast Mut. Ins. Ass'n, Mo.App., 116 S.W.2d 159, 163[3]; however, forfeiture of an insurance contract for nonpayment of premium is not favored in the law and the courts are prompt to seize upon circumstances which indicate an election to waive the forfeiture, M.F.A. Mutual Ins. Co. v. Quinn, Mo.App., 259 S.W.2d 854, 859[6], i. e., "very slight evidence will suffice to support a finding that a waiver of the right of forfeiture has occurred." Martin v. New York Life Ins. Co., N.M., 234 P. 673, 676[7], 40 A.L.R. 406, 411; Anno: Receipt of check for insurance as preventing forfeiture for nonpayment, 40 A.L.R. 419, et seq.

■■■■ On the issue of unreasonable delay in presentment of a check, the rule is that when a check is delivered by drawer to payee in the same place where the drawee bank is located, a reasonable time for presentment, absent cause for delay, is within banking hours on the day of, or the day after, its delivery; when drawn on a distant bank or on a local bank to be sent to the payee at a distant point, it should be forwarded for presentment and collection on or before the day after delivery, and when facts to excuse delay are disputed, the question is for the jury. Farm & Home Savings & Loan Ass'n of Missouri v. Stubbs, Mo.App., 98 S.W.2d 320, 335 [23, 24]. See also Maryland Casualty Co. v. Dobbin, Mo.App., 108 S.W.2d 166, 173–4 [10]; 11 Am.Jur.2d 851–3, Bills and Notes, § 766.

Under these authorities, the fact statement demonstrates a submissible case on behalf of respondent on either of the grounds of Instruction 2.

■■■■ The issuance on December 9, 1960, and the delivery on December 13, 1960, of Exhibit 4 by appellant, and its acceptance on December 14, 1960, by the Humphreys, consummated the contract of liability insurance between the Humphreys and appellant. That policy, by its provisions, embodied the entire agreement between those parties and it contained no condition such as effectiveness only if the premium is paid or if a check is honored. It it was the intention of M.F.A. to limit its liability by such conditions, it could have used such language or the language of its binder or renewal certificate, both of which, according to Mr. Dysart, were no longer effective after issuance of the policy. The letter of December 27, 1960, spoke of the policy in terms, "has lapsed or will lapse," which imply that the policy had been in force because a policy could lapse only if once in force. The letter is also supportive of a finding that it was simply a request for payment of the dishonored check in that it induced Mrs. Humphrey to write a note of apology for failure of her check to be honored and to enclose a money order "to cover" it and to pay for existing coverage for which they knew they

"owed" as opposed to purchasing new coverage. The payment "to cover" was cashed by appellant and only upon appellant's refusal to defend the Bartleman suit were the Humphreys conclusively advised that the money order had been applied to a policy they did not order and issued as coverage on an automobile no longer in service, a fact known to the issuing insurer.

The authorities cited leave no question that M.F.A. had the right to treat the check as a conditional payment of the policy premium, and M.F.A., by expressing the reservation of the right in its binder, indicated its knowledge of the right. The right to treat a check given for an insurance premium as conditional payment can be waived, however, within the meaning of the cases defining "waiver." In Sjoberg v. State Auto Ins. Ass'n of Des Moines, N. D., 48 N.W.2d 452, the insured mailed the insurer a check subsequently dishonored and returned for insufficient funds. North Dakota law provided that payment of a debt by check was not complete unless there was express agreement to constitute the check as payment and the policy in question had a forfeiture clause for non-payment of premium. The provision was held to be for benefit of the creditor and subject to his waiver. "The acts, if not the words of the defendant, indicate an agreement to accept the check in payment of the premium. The defendant had the right to waive both the provisions of the policy and of the law on matter of how payment should be made." 48 N.W.2d l. c. 457. In M. F. A. Mutual Ins. Co. v. Quinn, supra, the casualty in question occurred at a time when the premium on a similar continuing policy was unpaid and the insurance company was held to have waived right of forfeiture where it extended time for payment of the renewal premium for ten days, thereafter solicited payment of the past-due premium, and accepted it when finally paid. As in this case, "subsequent payment of a premium, then past due, and its acceptance, is evidence of a waiver of plaintiff's right to insist on prompt (cash) payment." 259 S.W.2d l. c. 859[8]. Martin v. New York Life Ins. Co. (50 A.L.R.2d 630, 644), held that where an insurance company upon receipt of a check, subsequently dishonored, in payment of premium, issued and delivered its unconditional receipt to the insured, the burden is upon the insurer to show that it received the check conditionally. Appellant attempts to meet the thrust of this proposition with Hickerson v. Con Frazier Buick Co.; Le Page v. Metropolitan Life Ins. Co.; G. F. C. Corp. v. Nesser; Komosa v. Monsanto Chemical Co., all supra, and Gill v. Mercantile Trust Co., Mo.App., 347 S. W.2d 420, none of which involved the unconditional type receipt of Martin v. New York Life Ins. Co., supra. As argued by appellant, M.F.A. did not issue a "receipt" for payment when it received the Humphrey check, but it did, on December 9, 1960, issue its policy which, on December 13, 1960, it delivered to the Humphreys. As previously noted, the policy contained no conditional payment language; it recited payment of premium; and the delivery was without conditions. Appellant could have presented the check immediately and withheld the policy until the check cleared; it could have relied on its conditional binder for thirty days. Instead, M.F.A. held the check for fourteen days and issued and delivered its policy and the insureds accepted it. During the time it held the check, M.F.A. entered payment on its books. The deposit of the check was not for collection. All work up of the policy was accomplished as though a cash premium had been paid. The only refutation of treatment of Humphrey's check as a cash transaction appears in the changed deposition answers of witness Dysart.

Under such circumstances, the policy was the equivalent of an unconditional receipt, at least to the extent of raising a jury question on unconditional receipt of premium, thereby placing insurance in force with a period extending through the date of casualty. In point with respondent's case is Mitchell v. Farm-

ers Ins. Exchange, Mo., 396 S.W.2d 647, even though it did not involve a dishonored check and did not reach the effect of nonpayment or delay in cashing the premium check. The insured's coverage expired May 3 and the policy contained a 15-day grace period which would extend the policy to May 18. On May 17, insured's wife mailed a check for the premium; on May 20 the casualty for which coverage was claimed occurred; on May 22 the company opened the mail from insured and forwarded the check and "avoid lapse" notice to its cash receipts department; on May 23 the check was deposited and the "avoid lapse" notice was stamped "paid." Farmers contended the policy expired May 18 and had lapsed prior to receipt of the check May 22, and that there was no payment until actual payment of the check. Farmers' contention was held to overlook "the inescapable conclusion that, regardless of the time limits fixed by the policy and by the 'Avoid Lapse' notice, and regardless of whether, by Farmers' practice, deposit of premium in the post office was not considered payment, all such requirements were waived by Farmers. * * * Farmers treated the payment as a routine renewal. The check was accepted and deposited to Farmers' account. The 'Avoid Lapse' notice was marked 'PAID' and Kontz's policy record continued in the active policy files of the company. * * * Farmers, having specified the payment terms, could waive its requirements. M.F.A. Mutual Ins. Co. v. Quinn, Mo.App., 259 S.W.2d 854, 859[5–8]. Here the facts bespeak waiver in such unequivocal terms * * *." 396 S.W.2d 1. c. 650[1, 2]. As in that case, M.F.A. had the right to treat a check as conditional payment, but by its conduct and actions handled used, or "treated" the check as payment and its policy as though in force. The cases are analogous because of the acts constituting waiver of conditional payment. Another case which fixed liability on an insurer for acts done in response to receipt of a check subsequently dishonored is Hockert v. New York Life Ins. Co., su-

pra. The insured failed to pay a semiannual premium due February 18, 1935, and the policy lapsed; however, on May 18, the insured applied for reinstatement and executed a blue note for $32.46 and a check for $10.50 to cover total premium of $42.-96, with the effect of extending the policy to May 18. On May 16 the company wrote insured that if he executed another blue note and sent $4.56, the policy would be extended to June 18. The insured complied May 18 and, upon receipt of insured's check on May 20, the company did not wait to see if the check would clear but delivered a receipt to insured which read "received in cash" and extended the policy. Upon dishonor of the check, insurer disclaimed coverage. "* * * the company thus show(ed) that it treated the check as payment." 276 N.W. 1. c. 426[10]. In New York Life Ins. Co. v. Miller, supra, insured had a policy with premium due November 17 for which, on November 13, he gave a postdated check. On November 18 the check was endorsed and deposited and payment entered on the daily report. The company also mailed a receipt stating: " 'If remittance otherwise than in cash has been made, this receipt shall be void if payment * * * is not actually received by the Company.' " 135 F.2d 1. c. 551. Dishonor occurred November 20 and, on November 26, the insurer wrote to insured that the premium was unpaid, urged application for reinstatement, and reversed the account entries. The letter reached insured's home November 28 after he was gored by a bull November 27, resulting in death December 3. Upon receipt of the letter and dishonored check, insured's wife forwarded a money order. As here, the Company moved for directed verdict on the ground of no evidence of unconditional acceptance of check as premium payment. The case was submitted on "whether the check had been given and accepted as payment of the premiums." 135 F.2d 1. c. 551. In denying the same contention made by M.F.A., i. e., that no submissible case was made, the court said the check "was accepted and retained * * * without

comment. It was not deposited for collection until November 18, at which time notation of payment of premiums was recorded on the office records and official receipts were issued. When the check was reurned dishonored it was held * * * for a day before being returned to the maker. * * * The money order * * * was retained in the branch office for several days before being returned, and it was inferable that news of the accident had reached the insurer in the interim. The conduct of appellant in these respects was in a measure equivocal, and we are not prepared to say that it furnished no rational basis for the jury's verdict." 135 F.2d 1. c. 551–552[3].

Certain of appellant's citations are subject to further distinction: In Gill v. Mercantile Trust Co., supra, the only evidence tending to show waiver of conditional payment or unconditional acceptance was an indication on a ledger sheet of payment received; in Le Page v. Metropolitan Life Ins. Co., supra, there was no evidence of an agreement to accept a check in payment of the premium and a conditional receipt had been given for the check; and in Hickerson v. Con Frazier Buick Co., supra, the bill of sale issued to the purchaser of an automobile was no evidence of acceptance of a check in lieu of cash because the bill of sale was only a compliance with the mandate of Section 301.200(2), V.A.M.S., that a dealer shall deliver a bill of sale to the purchaser of a new car. National Union Fire Ins. Co. v. Want, 181 Ark. 824, 28 S.W.2d 63, and Washington Nat. Ins. Co. v. Simmons, Ark., 147 S.W.2d 3, involved obvious conditional receipt situations because of policy and reinstatement provisions under which the checks were received.

Particularly with respect to the submission of unreasonable delay in processing the check and resultant prejudice, note from the fact statement that appellant's agent in Bucklin, at 10 a. m., November 29, took possession of a check drawn on the Bucklin bank payable to M.

F.A. Presentment was not undertaken until December 13, and it was not presented to the drawee bank until December 16. Appellant does not undertake any showing or argument of cause for delay within the rule of Farm & Home Savings & Loan Ass'n v. Stubbs, supra, except that the check and application were part of a normal transaction and that the matter was handled in the normal course of business. There was no evidence that the delay in presentment was custom and usage in the insurance industry. It is not shown that appellant's agent (who had enough authority to execute binders) could not have cashed the check in Bucklin on the morning he received it or that he could not have at least ascertained the status of the drawer's account there. Nor is there any showing that appellant, upon receipt of the check on December 1, could not have started it immediately through collection channels. The authorities quoted would rule against an 18-day delay being a reasonable presentment as a matter of law, and the question of unreasonable delay was, therefore, for the jury.

In the matter of prejudice, "the drawer of a check is entitled to notice of its non-payment within a reasonable time, in order that he may take any steps which are available to him to protect his interest," Selby v. McCullough, 26 Mo.App. 66, 72; "and even though the drawer had no funds or property in the hands of the drawee, he is entitled to have the bill duly presented and to receive due notice of its dishonor, if there was a fluctuating balance between them in the course of their dealings," Adams v. Darby & Barksdale, 28 Mo. 162, 165. Note that the Humphreys had a balance of $13.20 in the Bucklin bank prior to the $2.20 withdrawal sometime on November 29, the date of the check, leaving a balance at the close of business on November 29 of $11.00. The $2.20 check may have cleared later on the 29th than insured's check might have if taken promptly to the bank by Ralston. After the $2.20 check was paid, $11.00 re-

mained in insured's account until sometime December 1 when a $10.66 check was paid, and there was no evidence that the bank would not have paid the check during those times; the evidence is only that the bank would not pay on the 16th when the balance was $0.09 or less. Note also that when the Humphreys learned of the failure of their check, they moved forthwith "to cover" it by forwarding a money order. This supports an inference that had the check been presented and notice of dishonor given within a reasonable time, the Humphreys would have moved "to cover" the check with a money order long before the casualty on January 9, and even the new (unapplied for) coverage would have been in effect, the denial of which is the obvious prejudice. Such circumstances warranted submission of the issue of prejudice also to the jury, for, as in New York Life Ins. Co. v. Miller, supra, "Had the dishonored check been returned to the insured promptly upon its delivery to the Portland agency, it would presumably have reached him * * * prior to his injury; and there is no reason to suppose that it would not immediately have been made good and the certificate of insurability furnished." 135 F.2d 1. c. 552[4]. Appellant's citation, Missouri Pac. R. Co. v. H. M. Brown Coal Co., 226 Mo.App. 1038, 48 S.W.2d 86, is not in point because there was no evidence tending to show the drawer of dishonored checks was damaged by the payee's delay in presenting the checks to the bank for payment.

Appellant attacks Instruction 2 on several grounds. It charges that it failed to hypothesize "all essential fact issues necessary to establish the legal proposition on which the right to the verdict is based," Myers v. Buchanan, Mo., 333 S.W.2d 18, 21, Williams v. Ford Motor Co., Mo.App., 411 S.W.2d 443, 450[9], Civil Rule 70.01, V.A.M.R., namely, whether the check was accepted as payment, whether garnishee's treatment of the check constituted waiver of conditional payment, and whether garnishee's treatment estopped it from maintaining conditional acceptance of the check. Appellant charges also that it gives the jury a roving commission, Emery Bird Thayer Dry Goods Co. v. J. C. Nichols Co., Mo., 427 S.W.2d 492, Saunders v. Crusader Life Ins. Co., Mo.App., 421 S.W.2d 563, State ex rel. Banks v. Hostetter, 344 Mo. 155, 125 S.W.2d 835, in that the language, "treated the check as payment of the premium," directed the jury to apply their own view of the law, and that there was no evidence to support that part of the instruction, Wolfe v. Harms, Mo., 413 S. W.2d 204, 209–210[1]. Appellant makes the same attacks on the second portion of the submission, and charges, finally, that Instruction 2 failed "to negate garnishee's affirmative defenses" submitted by Instruction 3.

It has already been demonstrated that respondent adduced evidentiary support sufficient to make a submissible case on both theories of recovery in Instruction 2.

A verdict-directing instruction need not be as detailed as in the past and it should submit only the ultimate fact issues. Price v. Seidler, Mo., 408 S.W.2d 815, 824[17]; Civil Rule 70.01, supra. The ultimate legal question in respondent's first disjunctive submission was whether appellant (unconditionally) accepted the Humphrey's check as payment of a premium for liability insurance; the ultimate fact question bearing on that proposition was whether appellant acted and conducted itself in such manner with respect to the check to show unconditional receipt or waiver of conditional receipt of the check, i. e., whether appellant "treated" the check as payment. The situation is similar to Randolph v. Supreme Liberty Life Ins. Co., 359 Mo. 251, 221 S.W.2d 155, where, in suit on a life policy, the company charged error in the refusal of an instruction that the question of waiver of proof of death was an affirmative fact which plaintiff had the burden to establish. The charge was denied in that "The question of waiver is a question of law. The facts upon which a

finding of waiver may be based * * * are * * * for the jury to determine; but instructions should tell * * * the legal effect of proving or failing to prove such facts. This instruction says that a question of law is a question of fact." 221 S.W.2d 1. c. 158[5, 6]. If the court had submitted for the jury to find that M.F.A. unconditionally accepted the Humphrey's check or that it waived conditional acceptance, it would have erred in submitting questions of law as opposed to this simple, brief, and impartial direction, free of arguments and detail. See Williams v. Ford Motor Co., supra, 411 S.W.2d 1. c. 450[7, 8], where "The ultimate fact was whether the steering mechanism worked properly" and it was held properly submitted on behalf of plaintiff in whose favor a verdict was authorized if the jury believed " 'the steering gear * * * did not work properly.' "

The attack on "treated" is unwarranted because it has a familiar usage in that "treat" commonly means "to deal with or bear oneself toward in some specified way: behave or act towards: assume an attitude or form of behavior to: * * * syn DEAL (with), HANDLE: TREAT in the sense of doing about, serving, or coping with is usu. accompanied by context indicating an attitude, temperament, point of view determining behavior or a manner of approach or execution * * *." Webster's Third New International Dictionary, pp. 2434–2435. In Mitchell v. Farmers Ins. Exchange, supra, 396 S.W.2d 1. c. 650, the court, in summarizing the company's acts, said that "Farmers treated the payment as a routine renewal," a recognition that the ultimate fact was that the company did so treat the payment and if that ultimate fact be found true, waiver was the legal result. " * * * conduct of the insurer in inviting payment by check, and in treating such payment as cash on its books and records and issuing receipts as for cash, has frequently been relied upon as supporting a finding that the check was accepted unconditionally * * *." 29 Am.Jur. 843, In-

surance, § 536; 50 A.L.R.2d 630, 644[5]; Hockert v. New Life Ins. Co., supra.

Since use of "treated" was proper under the authorities, no error of roving commission was committed on that ground.

■ As stated by appellant, verdict-directing instructions must negative affirmative defenses, Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14; however, that rule is not applicable here because Instruction 3 did not submit an affirmative defense, i. e., a defense which would defeat respondent's recovery even if the jury found for respondent on his verdict-directing instruction. Analysis of Instruction 3 shows it to be a 3–paragraph submission with the paragraphs connected by "and." Paragraphs first and third, standing alone, submit no defense at all, and when they are read with paragraph second (as they must be), it is seen that the whole instruction submitted only the converse of respondent's first disjunctive ground of recovery. When Instructions 2 and 3 are read together, as they must be, Morris v. Continental Casualty Co., Mo.App., 423 S.W.2d 42, 47, it is seen that the same legal theory is contained in both. The difference is that respondent recovered if the jury found that appellant "treated" the check as payment of the premium, and appellant won if the jury found that appellant "did not accept" the check as payment of premium. The difference in the effect of the words employed is insignificant in determining the legal sufficiency of instructions because the court "should not be hypertechnical in requiring grammatical perfection, the use of certain words or phrases, or any particular arrangement or form of language, but * * * should be concerned with the meaning of the instruction * * * to a jury of ordinarily intelligent laymen * * *." Tietjens v. General Motors Corp., Mo., 418 S.W.2d 75, 86[9].

Neither is the second part of Instruction 2 subject to a charge of roving commission for failure to define its terms. It submitted the ultimate facts of unreasonable de-

lay and prejudice, both of which are terms within the understanding of jurors. Tietjens v. General Motors Corp., supra.

 Appellant complains of the refusal to give its offered Instruction A, but no error could have been committed by such refusal because the instruction is virtually identical to Instruction 2 given on behalf of appellant and without objection on its part.

Appellant charges error in permitting respondent to call witness Dysart under Section 491.030, V.A.M.S., in allowing him to be cross-examined, and in permitting an attempt to impeach and attack the credibility of Mr. Dysart. The argument is that Mr. Dysart was not a party to permit his calling as a witness under Section 491.030; that he was not subject to impeachment; and that the court permitted respondent to insinuate to the jury that Mr. Dysart had done something wrong in correcting his answers.

 Section 491.030 provides that any party to a civil suit may call any adverse party to testify as a witness in his behalf and "the party so called * * * may be examined * * * under the rules (of) cross-examination." Under this provision it has been proper to call one employed as president and general manager of a defendant company, Neuhoff Bros. Packers v. Kansas City Dressed Beef Co., Mo.App., 340 S.W.2d 193, 196, and the claim agent of a defendant railroad, State ex rel. Bressman v. Theisen, Mo.App., 142 S.W. 1088, 1089. Similar to those situations, respondent showed that witness Dysart was a full-time employee of appellant in a managerial position where, at the time of the incidents in issue, he supervised the department of policy services. No other officer or employee would have been more competent to describe the operation of that department through which the Humphrey policy was processed. He was, therefore, subject to call and cross-examination under the statute.

 The charge of impeachment by inconsistent statements through improper use of deposition may be disposed of summarily because appellant recognizes the absence of such impeachment when it asserts in its brief that the testimony of Mr. Dysart, whether plaintiff's own witness or adverse party, "was in complete harmony with his testimony on deposition after he had completed and corrected his answers," and that "the corrected and completed testimony of Witness Dysart was consistent with other testimony originally given by him on his deposition." Slaughter v. Sweet & Piper Horse and Mule Co., Mo. App., 259 S.W. 131, 135[10]. A deposition under oath consists of "original answers, as well as * * * changed answers, with his reasons, if any, therefor," Capra v. Phillips Inv. Co., Mo., 302 S.W.2d 924, 933[10, 11]; and, at the direction of the court, respondent read both the original and changed answers of the witness. Such are not the circumstances of the impeachment proscribed in Frank v. Wabash R. Co., Mo., 295 S.W.2d 16, 22[15], and related cases cited by appellant.

 Appellant's charge that respondent's examination of witness Dysart was an attempt to make it appear to the jury that witness Dysart had done something wrong is based on Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S.W.2d 858, 867–8[11–12], where the court abused its discretion in permitting an examination of an adverse witness because "the cross-examination of Hulse, by plaintiff's counsel, was replete with insinuations of wrongful conduct on the part of the witness. The cross-examination was extensive in scope, suggestive, among other things, that Hulse had suggested the change in Harold Mignery's evidence; that he had got Kendall drunk, and that the defendant railroad company had been responsible for, or connived at, getting Harold in the Home for Little Wanderers. No showing, prior or subsequent to the cross-examination, was made to support any of

these implications." That situation is entirely different from this case where witness Dysart, as he had the right to do, changed his answers, giving his reasons therefor; and counsel simply used both the original and corrected answers, as he was entitled to do, Capra v. Phillips Investment Co., supra.

Judgment affirmed.

HOUSER, C., not sitting.

WELBORN, C., concurs.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HENLEY, P. J., SEILER and STORCKMAN, JJ., and BUDER, Special Judge, concur.