Louis W. HENRY, Plaintiff-Appellant,

v.

CERVANTES–DIVERSIFIED AND AS-SOCIATES and Fireman's Fund Insurance Co., Defendants-Respondents.

No. 49305.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 10, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1985.

Joseph A. Felon, Clayton, for plaintiff-appellant.

Mark F. Haywood, St. Louis, for defendant-respondent Cervantes.

John J. Horgan, St. Louis, for defendant-respondent Fireman's Fund.

CARL R. GAERTNER, Judge.

Louis W. Henry appeals from an adverse judgment on his third party claim against Cervantes-Diversified and Associates, a corporation (CDA) and Fireman's Fund Insurance Company (Fireman's Fund). We affirm.

Appellate review of a court-tried case is limited by rather fundamental legal principles. The judgment is presumed to be correct and will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or it erroneously declares or applies the law. The judgment is to be affirmed under any reasonable theory supported by the evidence and we are obliged to accept as true the evidence and permissible inferences

which may be drawn favorable to the prevailing party, and disregard the contradictory testimony. *St. Louis County, Mo. v. Oakville Dev. Company, Inc.,* 676 S.W.2d 919, 921 (Mo.App.1984).

The pertinent facts must begin with the purchase by Henry of a business known as A–1 Towing Company from one Kenneth Elders. Henry and Elders met on October 31, 1979, at the CDA offices with Donald O'Neill, through whom Elders had maintained automobile liability insurance with Fireman's Fund on the towing company's vehicles. An agreement was made to cancel Elders' policy and to obtain a new policy covering Henry's operation of the business. As payment of one year's premium for such coverage, Henry testified he gave $2,386.00 to O'Neill: a $954.00 check payable to "Fireman's Fund" and the balance in cash. According to Henry, the check was never cashed and the evidence is silent regarding what happened to the cash allegedly given to O'Neill, who did not testify. Henry also signed and received a copy of the application, which was signed by O'Neill as "producer." It was addressed to Fireman's Fund and the name of CDA was written in as the "agency." The application provided that Fireman's Fund would be bound for a period not to exceed thirty days upon its being completed, executed and accepted by the producer.

A handwritten memorandum apparently prepared by one Susie Burns, whose identity and position were not disclosed by the evidence, and addressed to Theresa Hebron, a Fireman's Fund underwriter, was in evidence. The memorandum provided:

Please issue policy per attached APL [application?] and our check for $954.00. Coverage currently under policy number AA13923 that will be canc. [cancelled?] The rest of driver info will follow ASAP. Please issue policy.

There is no evidence that this memorandum, the check or the application were sent to Fireman's Fund, although copies were subsequently discovered in a file in the CDA offices. The usual procedure at CDA with respect to these types of documents called for the originals to be placed in an "out basket" for mailing to Fireman's Fund at the close of the business day. CDA's president, however, was unable to state whether these documents were in fact mailed and Fireman's Fund had no record of their ever being received. The A–1 Towing Company policy issued by Fireman's Fund to Elders was not cancelled until January, 1980, and then for non-payment of premiums due in November.

Henry testified that he asked O'Neill about his policy in mid-November, 1979, and was told it would be forthcoming. He said he never noticed that the $954.00 check had not cleared. In May, 1980, he had a minor accident and reported it to O'Neill by telephone. He still had not received any insurance policy. Henry paid for the damage caused by this accident and called O'Neill to request reimbursement. O'Neill did not tell him he was not covered at that time. On June 29, 1980, Henry was involved in an accident with one Jasper Kermans. He telephoned a report of this accident to O'Neill. Sometime later, Henry called "to see what they were doing about it," and spoke to Mr. Cervantes who told him for the first time he had no coverage.

Kermans sued Henry for damages resulting from the accident. Fireman's Fund refused to defend the suit. Henry then filed a third party petition against CDA and Fireman's Fund in which he alleged that O'Neill was the agent of CDA and CDA was a producer-agent of Fireman's Fund. The third party petition recited Henry's payment to O'Neill and the issuance of the binder, a copy of which was attached and incorporated by reference in the third party petition. It was ultimately alleged that the failure to undertake to defend the Kermans lawsuit and to protect Henry's interests was a breach of the agreement made by CDA and Fireman's Fund to furnish liability insurance.

■ The case was set for trial on September 5, 1984. On that date Kermans dismissed his action against Henry and the case proceeded to trial without a jury on Henry's third party petition for recovery of

his attorney's fees and costs of defense. The trial court found in favor of CDA and Fireman's Fund. The parties did not request findings of fact or conclusions of law, and none were made. Accordingly, all fact issues shall be considered as having been found in accordance with the result reached, Rule 73.01(a)(2), and the judgment of the trial court will be affirmed if it can be supported on any theory of law in accordance with the evidence. *Young v. Ray America, Inc.*, 673 S.W.2d 74, 78 (Mo.App. 1984).

■ We review the judgment in light of the two theories Henry has propounded in the case. In his third party petition he alleged that CDA and Fireman's Fund breached the agreement to furnish him with liability insurance. The theory which he advanced in the trial of this case, and that which he argues here, is based upon a theory that a contract of insurance came into existence upon his payment of the premium to O'Neill. As issues not raised by the pleadings and tried without objection are treated as though they were raised by the pleadings, *id.* at 76, we review the judgment in light of this theory as well.

■ Crucial to this second theory is the legal status of O'Neill and his relationship to CDA and to Fireman's Fund. The record before us is silent regarding this quintessential element. The third party petition alleges that O'Neill was an agent, servant and employee of CDA, acting within the scope of his employment. This averment was denied by both CDA and Fireman's Fund. The burden of proving an agent's authority lies with the party asserting the agency. *Philp v. Minnesota Mutual Life Ins. Co.*, 657 S.W.2d 679, 682 (Mo. App.1983). Other than the fact that the meeting between Henry, Elders and O'Neill took place at the CDA offices, there is no evidence of probative value tending to show any legal relationship whatsoever between O'Neill and CDA, and especially between O'Neill and Fireman's Fund.

■ The evidence did show that CDA was an independent insurance agent authorized by Fireman's Fund, among other insurance companies, to solicit applications for insurance. CDA was authorized to bind Fireman's Fund to the coverage proposed in an application with certain time and amount limitations, and the application signed by Henry clearly indicated this limitation to be for a period not in excess of thirty days. Even assuming O'Neill was an employee of CDA, Fireman's Fund could not have been bound to extend coverage for more than 30 days after October 31, 1979. There is no evidence that O'Neill made any representation contrary to the express limitation contained in the application. Even if he had done so, it would not be binding upon Fireman's Fund as O'Neill had neither actual nor apparent authority to bind that company. Apparent authority results only from the acts of the principal, not from any acts of the agent. *Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 13 (Mo.1970). Fireman's Fund did absolutely nothing with which to clothe O'Neill with any appearance of authority to act in its behalf, not even to the extent of supplying forms which might be so construed. *See Baker v. St. Paul Fire and Marine Ins. Co.*, 427 S.W.2d 281 (Mo.App.1968). Henry's reliance upon O'Neill's statements to the effect that he was covered is misplaced. Apparent authority cannot be based upon an agent's unauthorized claim of authority. *Inland USA, Inc. v. Reed-Stenhouse, Inc. of Missouri*, 660 S.W.2d 727, 733 (Mo.App. 1983).

■ In attempting to hold Fireman's Fund accountable for O'Neill's actions in retaining his cash and $954.00 check, Henry relies upon the case of *Bartleman v. Humphrey*, 441 S.W.2d 335 (Mo.1969). The only relevance *Bartleman* has to this case is the observation of Judge Higgins that "[t]hese cases usually have bizarre circumstances, and this is no exception." *Id.* at 339. In *Bartleman*, an insurance company agent, not an independent agent, issued a binder conditioned upon the check given in payment of the premium being honored and paid. Although the check was dishonored, the insurance company nevertheless issued and delivered its policy

which contained no conditional language similar to that of the binder. The court held the issuance of the policy without condition and without waiting for the check to clear constituted an unconditional receipt for the payment of the premium and, in effect, a waiver of the condition. *Id.* at 344. Assuming again that Henry had proven O'Neill to be an employee of CDA, an independent agency, in the absence of any knowledge or action on the part of Fireman's Fund the latter could not be bound beyond the 30 day limitation clearly expressed in the application by O'Neill's retention of the premium. Even where there is conflicting evidence or where reasonable men might draw different conclusions from undisputed evidence regarding the authority of an agent, the question becomes one for determination by the fact-finder. *Philp v. Minnesota Mutual Life Ins. Co.*, 657 S.W.2d at 182. We are bound to accept the finding of the trial court in this case.

We are not unmindful of the liability incurred by an insurance broker who undertakes to obtain insurance for a client and fails to do so and further fails to so notify the client. *See Pittman v. Great American Life Ins. Co.*, 512 S.W.2d 857 (Mo.App.1974); *Kap-Pel Fabrics, Inc. v. R.B. Jones & Sons, Inc.*, 402 S.W.2d 49 (Mo.App.1966). Henry could have pleaded CDA's breach of an agreement to obtain insurance coverage *and* its failure to advise him thereof. However, he pleaded no such failure nor does he advance such a theory in this court. Moreover, Henry failed to make inquiry concerning his coverage from November, 1979 until after the accident of June 29, 1980, during which time he never received a policy and paid another claim out of his own pocket without reimbursement. An insured may not "close his eyes and go on forever and act as an incompetent ward with the broker as his guaranteeing guardian." *Kap-Pel Fabrics, Inc.*, 402 S.W.2d at 58.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.